DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Ottawa County Municipal Court after the court found defendant-appellant, Ruben C. Rodriguez, guilty of driving across a grade crossing upon the approach of a train in violation of Section 331.39 of the Codified Ordinances of the Village of Rocky Ridge ("Section 331.39"). From that judgment, appellant raises the following assignments of error:
 "1. The Trial Court committed reversible error in convicting the Appellant because the Village of Rocky Ridge failed to prove each and every element of the offense under Section 331.39 of the Codified Ordinances of the Village of Rocky Ridge, Ohio. Accordingly, the judgment was not legally sufficient.
 "2. The judgment of the Trial Court was against the manifest weight of the evidence and thus cannot be sustained.
 "3. The Ottawa County Municipal Court committed reversible error and abused its discretion when it refused to permit re-cross examination of the pivotal witness where she completely changed her testimony just given on cross-examination.
 "4. The Ottawa County Municipal Court committed reversible error and abused its discretion when it imposed a thirty (30) day suspension of Appellant's driver's license under R.C. 4507.34 where the circumstances did not warrant suspension of Appellant's driver's license for allegedly `reckless' conduct."
On June 25, 2000, Rocky Ridge Chief of Police Bud Chasteen issued to appellant a citation, which charged that on June 24, 2000 at 5:40 p.m., appellant "DID DRIVE ACROSS A GRADE CROSSING UPON APPROACH OF A TRAIN" in violation of Section 331.39. The citation was issued as a result of a report filed by Eva Kitchen. The case proceeded to a trial to the court at which the following evidence was presented.
Eva Kitchen testified that on June 24, 2000, she was driving northbound on Lickert-Harder Road in Rocky Ridge, Ohio when she stopped at the Conrail railroad crossing because of an approaching train. At that time, the crossing gates were down and the warning lights were flashing. When she was stopped at the crossing, she saw two trucks approach the same intersection from Schiller Road and drive around the gates. Kitchen described the color of the first truck as cream with blue fenders. She could not, however, see a license plate number or the driver. Kitchen described the second truck that crossed the railroad tracks as a brown pickup truck and stated that she recognized its driver, although at the time of the incident she could not recall his name. Kitchen did, however, identify appellant in court as the man she saw drive the brown pickup truck across the railroad tracks. She also wrote down the truck's license plate number with the assistance of her daughter. Kitchen testified that the brown truck was approximately fifty feet beyond the crossing when the train entered the intersection. Kitchen then reported the infraction to the Village of Rocky Ridge Police Department. Later that evening, Kitchen asked Police Chief Bud Chasteen if he had seen her report. Chief Chasteen then obtained the report and asked Kitchen to accompany him to appellant's home. At appellant's home, Kitchen stayed in the police cruiser but recognized the brown truck in the parking lot next to appellant's home. On cross-examination, Kitchen admitted that while she did write down the license plate number of the brown truck, her daughter read the number to her. She also admitted that on the day of the incident, her daughter saw the driver of the brown truck and identified the driver as appellant. Kitchen further stated that she never told Chief Chasteen that she personally saw appellant driving the truck. Finally, Kitchen admitted that she does not personally know appellant and has never spoken to him, but that she just knows who he is from around town. On redirect examination, however, Kitchen again identified appellant in court as the man she saw driving the pickup truck around the lowered crossing gates. After this redirect examination, appellant sought to recross-examine Kitchen, but the court refused to allow it.
The state also called Chief Bud Chasteen to testify in the trial below. Chasteen testified that he investigated the railroad crossing violation reported by Kitchen. He stated that Kitchen told him that when she witnessed the violation, she recognized appellant but could not remember his name. Her daughter then told her the name of the driver and Kitchen reported that to Chasteen. Chasteen then drove to appellant's home and confronted him. Chasteen testified that appellant first stated that he did not drive around the crossing gates but then said that the train was not that close. Chasteen also testified that appellant acknowledged being the driver of the truck. On cross-examination, however, Chasteen admitted that he did not give appellant a time frame when confronting him about the railroad crossing violation. At the conclusion of the state's case, appellant moved for an acquittal, which the trial court denied.
Appellant then testified in his defense. Appellant denied driving around the lowered crossing gates and denied admitting to Chief Chasteen that he had driven around the gates. Appellant further stated that on the day in question, he worked on the truck and drove it at around 3:30 in the afternoon. He then gave the truck to his brother Raul, who lives with him and who usually drives the truck. Appellant testified that he and Raul look alike. At the conclusion of his testimony, appellant renewed his motion for an acquittal, but the motion was denied.
Upon a review of the evidence, the court found appellant "guilty of the offense charged" and fined him $100 and court costs. In addition, the court made a finding of recklessness pursuant to R.C. 4507.34, and suspended appellant's driver's license for thirty days. It is from that judgment that appellant now appeals.
We will first address the third assignment of error in which appellant asserts that the trial court erred in refusing to allow him to recross-examine Eva Kitchen, the state's key witness. Appellant argues that because Kitchen identified him as the driver of the truck on redirect examination, after stating on cross-examination that she never told Chief Chasteen that she had seen appellant driving the truck, he was entitled to recross-examine Kitchen to test her credibility.
The scope of cross-examination is a matter which rests within the sound discretion of the trial court. Evid.R. 611; O'Brien v. Angley (1980),63 Ohio St.2d 159, 163. The opportunity for recross-examination is likewise within the trial court's discretion. State v. Faulkner (1978),56 Ohio St.2d 42, 46. An abuse of discretion connotes more than an error in judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. "Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine." Faulkner, supra, at 46, citing Alfordv. United States (1931), 282 U.S. 687.
In the present case, appellant has not correctly conveyed Kitchen's testimony in the proceedings below. On direct examination, Kitchen identified appellant in court as the man she saw driving the brown truck around the lowered railroad crossing gates on the date of the offense. She then testified on cross-examination that on the day of the offense, she told Chief Chasteen that her daughter identified the driver as appellant. On redirect examination, Kitchen again stated that the man sitting at the defendant's table, appellant, was the man she saw driving the brown truck around the crossing gates. Accordingly, on redirect examination, Kitchen did not testify on any new areas necessitating recross-examination. Rather, she simply reaffirmed her previous testimony.
We therefore cannot say that the trial court erred in denying appellant's request to recross-examine this witness, and the third assignment of error is not well-taken.
The first and second assignments of error are inter-related and will therefore be discussed together. Appellant asserts that there was insufficient evidence to support his conviction and that the conviction was against the manifest weight of the evidence.
The Supreme Court of Ohio has ruled that "the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997),78 Ohio St.3d 380, 386. "Sufficiency" applies to a question of law as to whether the evidence is legally adequate to support a jury verdict as to all elements of a crime. Id. Upon review of the sufficiency of the evidence to support a criminal conviction, an appellate court must examine "the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. However, under a manifest weight standard, an appellate court sits as a "thirteenth juror" and may disagree with the fact finder's resolution of the conflicting testimony. Thompkins, supra, at 387. The appellate court, "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against conviction.'" Id., quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Since appellant's assignments of error encompass both sufficiency and manifest weight issues, we must apply both standards.
Initially, appellant argues that the citation issued to him did not specify the paragraph of Section 331.39 with which he was charged. Under either section, however, appellant contends that the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.
Section 331.39 is titled "DRIVING ACROSS GRADE CROSSING" and reads:
 "(a) Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, he shall stop within fifty feet but not less than fifteen feet from the nearest rail of the railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
 "(1) A clearly visible electric or mechanical signal device gives warning of the immediate approach of a train;
"(2) A crossing gate is lowered;
 "(3) A human flagman gives or continues to give a signal of the approach or passage of a train;
 "(4) A train approaching within approximately 1,500 feet of the highway crossing emits a signal audible from that distance and the train, by reason of its speed or nearness to the crossing, is an immediate hazard;
 "(5) An approaching train is plainly visible and is in hazardous proximity to the crossing.
 "(b) No person shall drive any vehicle through, around or under any crossing gate or barrier at a railroad crossing while the gate or barrier is closed or is being opened or closed."
Although the citation issued to appellant did not specify the paragraph of Section 331.39 with which appellant was charged, it did charge that appellant "DID DRIVE ACROSS A GRADE CROSSING UPON APPROACH OF A TRAIN" and stated that the offense violated Section 331.39. The evidence at the trial then established that appellant drove around a lowered crossing gate, a violation of Section 331.39(b). Specifically, Eva Kitchen testified that she saw appellant driving a brown truck around the crossing gate. She also identified appellant in court as the driver. The license plate number that Kitchen then reported to the police revealed that the brown truck was registered to appellant.
Given this evidence, we cannot say that the conviction was not supported by sufficient evidence or was against the manifest weight of the evidence. The first and second assignments of error are therefore not well-taken.
Finally, appellant asserts in his fourth assignment of error that the trial court erred in imposing on him a thirty day license suspension pursuant to R.C. 4507.34.
R.C. 4507.34 allows a court to suspend the driver's license of a person who "is found guilty under the laws of this state or under any ordinance of any political subdivision of this state, of operating a motor vehicle in violation of such laws or ordinances, relating to reckless operation[.]" The statute is not limited to those found guilty of reckless operation under R.C. 4511.20. Akron v. Willingham (1957),166 Ohio St. 337.
In Willingham, the Ohio Supreme Court essentially adopted a two-step process in analyzing the propriety of suspending a defendant's driver's license for speeding. In The City of Bowling Green v. Griffin (Jan. 17, 1992), Wood App. No. 91WD058, unreported, we determined that Willingham
requires that a trial court (1) make a determination that a violation of the statute or ordinance in question be "related to reckless operation" and (2) analyze the underlying facts of the case so as to determine whether the circumstances of the offense warrant a discretionary suspension of the defendant's driver's license. In Griffin, the defendant was found guilty of violating a local ordinance that is identical to Section 331.39. We concluded that a violation of the ordinance did justify a finding that it was "related to reckless operation" because the ordinance was designed to enhance public safety by regulating the operational manner of motor vehicles. In Griffin, however, we concluded that the trial court abused its discretion by imposing a license suspension on the defendant where there was no evidence indicating the degree of the defendant's fault in causing a tragic accident.
Applying Willingham and Griffin to the present case we conclude that a violation of Section 331.39 justifies a finding that the offense is "related to reckless operation." Examining the underlying facts to determine whether a discretionary license suspension was warranted, we find that the evidence presented at the hearing below did support such a suspension. Kitchen testified that she saw appellant drive around the lowered railroad crossing gate and that the train entered the crossing when appellant's truck was approximately fifty feet beyond the intersection. Accordingly, we cannot say that the trial court abused its discretion in suspending appellant's driver's license for thirty days pursuant to R.C. 4507.34. The fourth assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Ottawa County Municipal Court is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Mark L. Pietrykowski, P.J.
Peter M. Handwork, J. and Richard W. Knepper, J. CONCUR.