THE STATE OF OHIO, APPELLEE, *v.* FAULKNER, APPELLANT.

(No. 77-693—Decided October 18, 1978.)

*Mr. Ronald W. Vettel,* prosecuting attorney, for appellee.

*Mr. J. Tullis Rogers* and *Ms. Amy E. Poock,* for appellant.

*Per Curiam.*

## I.

Appellant has presented five propositions of law. Appellant proposes first that it was prejudicial error for the trial court to deny defense counsel the opportunity to conduct a recross-examination of the state's witness, Donald Cosner, where the prosecution has inquired into new areas during redirect examination, and that this constitutes a denial of defendant's right to confront the witnesses against him as guaranteed by the Sixth Amendment to

the United States Constitution and the provisions of Section 10, Article I of the Constitution of Ohio.[1]

During cross-examination, defense counsel made an extensive inquiry of Donald Cosner, the station attendant, as to the skin tone of the men involved in the robbery and the automobiles present at the gas station at the time of the robbery.[2]

---

[1]The Sixth Amendment to the United States Constitution reads as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

Section 10, Article I of the Constitution of Ohio reads, in pertinent part, as follows:

"* * * In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel; to demand the nature and cause of the accusation against him, and to have a copy thereof; to meet the witnesses face to face, and to have compulsory process to procure the attendance of witnesses in his behalf * * *."

[2]Pertinent excerpts from this line of questioning are as follows:

"Q. What color was this particular individual?

"A. The male?

"Q. The male that you say had this gold earring in his ear.

"A. Black.

"Q. Now when you say black, are you talking about the color of my shoes or just the fact that he was of a different racial group?

"A. He was colored.

"Q. Well, would you say he was the color of my shoes?

"A. No sir.

"Q. Would you say he was the color of the court reporter's desk?

"A. No sir.

"Q. Would you tell us what color black that you're talking about?

"A. I don't know how to describe it.

"Q. Well, if you're talking about black as a racial trait then you're talking about something that goes from the color of my shoes to patent leather, shiny black, to practically white.

"A. Yes.

"Q. If there is such a color as white.

"A. No.

"Q. Now somewhere in between you are saying was the color of the man who came in. Is that correct?

During redirect examination, the prosecutor asked Cosner to compare the appellant's skin tone with one of the three men involved in the robbery, as follows:

"Q. Now you testified, Mr. Cosner, concerning com-

"A. Yes sir.

"Q. Now where in between would this man fit?

"A. Around halfway in between, I would say; maybe a little bit more toward the white side.

"Q. A little bit more toward the white side?

"A. Yes.

"Q. Cafe au lait—coffee and cream? Is that a good description?

"A. Yes.

"Q. With a lot of cream?

"A. Yes sir.

"Q. What color was the man who you saw in the back seat of the car that never got out of the car, to your knowledge?

"A. Same amount of coffee with a little less cream.

"Q. With a little less cream. What about the short guy that you saw?

"A. About the same as the man in the back.

"Q. The same as the man in the back of the car?

"A. Yes sir.

"Q. All right. Then the shorter man and the man in the back of the car were would you say a little bit darker than the tall fellow?

"A. Yes sir.

"Q. Were there any other automobiles parked on the outside of the service station?

"A. Yes.

"Q. Did you have an automobile that was parked out there?

"A. Yes.

"Q. Were there any others?

"A. I had two cars. Both of them were parked up there.

"Q. What kind of cars were they?

"A. '70 Maverick and '63 [sic.] Comet.

"Q. Were both of those automobiles in running order?

"A. Yes sir.

"Q. Is a Maverick a Ford?

"A. Yes sir.

"Q. Comet is a Mercury?

"A. Right.

"Q. Were there any other automobiles outside that you knew of?

"A. Yes.

"Q. What others were out there?

"A. I think there was a Lincoln Continental—I think it is; I'm not sure."

plexions of various people. How does the complexion or skin tone of the defendant in this case, Carl Faulkner, compare to the skin tone of the taller man that you saw in the gas station on the night of December 10, 1975?

"A. Same skin tone.

"Q. Same tone skin?

"A. Yes sir."

The prosecution also questioned the witness as to the location of the automobiles in the vicinity of the Sunoco station. Afterwards, defense counsel requested the opportunity to conduct a recross-examination "[w]ith regard to the autmobiles and the skin tone." However, the trial court denied this request on the ground that defense had already explored both subject matters upon cross-examination and did not need to recross-examine Cosner.

Although a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, *Kent* v. *State* (1884), 42 Ohio St. 426; *Weaver* v. *State* (1929), 120 Ohio St. 97, the opportunity to recross-examine a witness is within the discretion of the trial court. *Liberty Mutual Ins. Co.* v. *Gould* (1976), 266 S · C. 521, 224 S. E. 2d 715; *United States* v. *Morris* (C. A. 5, 1973), 485 F. 2d 1385. Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine. See *Alford* v. *United States* (1931), 282 U. S. 687.

Upon a careful review of the record, we cannot find that the prosecution in the instant cause inquired into any new area, but rather inquired into the areas of skin tone and automobiles which were raised by defense counsel upon cross-examination. We hold that where, as in the cause *sub judice,* no new matters are explored on redirect examination, it is not an abuse of discretion for the trial court to deny defense counsel's request to conduct a recross-examination. *State* v. *Jones* (1974), 110 Ariz. 546, 521 P. 2d 978; *State* v. *Miles* (1976), 97 Idaho 396, 545 P. 2d 484; *State* v. *McSloy* (1953), 127 Mont. 265, 261 P. 2d 663; *State* v. *Fernandez* (1924), 157 La. 149, 102 So. 186.

## II.

Appellant proposes that it was prejudicial error for the trial court to comment during the charge to the jury on certain judicial admissions made by appellant on the witness stand.

The relevant portions of the charge were as follows:

"From the witness stand the defendant Faulkner admits he was armed with a loaded .38 caliber revolver; admits his intention to commit robbery of someone with a combined effort of the other two defendants. In fact, defendant admits that while so armed he did in fact commit robbery at the gas station referred to in the indictment and on the date so charged."

Appellant did not object at trial to the charge given the jury by the trial court, as required by Crim. R. 30, which states in part:

"A party may not assign as error the giving or the failure to give any instructions unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

Failure to timely object, pursuant to Crim. R. 30, precludes appellant from assigning as error the trial court's charge to the jury in the instant cause, *State* v. *Lane* (1976), 49 Ohio St. 2d 77, and an appellate court need not review such alleged error, in the absence of plain error, under Crim. R. 52(B). *State* v. *Lockett* (1976), 49 Ohio St. 2d 48. Crim. R. 52(B) reads:

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Under the facts of this case, appellant cannot successfully complain of prejudicial error, let alone plain error, under Crim. R. 52(B), where the trial court makes an accurate and correct restatement of judicial admissions given by appellant within the charge to the jury.

This proposition of law is overruled.[a]

## III.

Appellant's third proposition of law contends that the trial court erroneously instructed the jury as to intoxication to the prejudice of appellant. The relevant portion of the charge was as follows:

"Now some testimony was given by the defendant concerning his drinking of alcoholic beverages or beverage, the smoking of marijuana, and the taking of some kind of pills, however, the amount not specified.

"The Court says to you all this evidence constitutes no defense whatsoever, no excuse whatever for whatever you may find this defendant did."

The only evidence concerning intoxication was offered by appellant when he testified that "we got some pills, some more wine, and Willie [Jones] got some reefers" and "while we were riding on the Freeway we were smoking reefers. We were drinking wine." There was no testimony as to the amount of wine or marijuana or the number or kind of pills consumed by appellant prior to the commission of the crime. The only evidence concerning the effect these substances had on appellant was the following testimony:

"Q. So, if you drank some wine or smoked some reefer, you didn't do too much that you can't remember these things?

"A. I didn't."

This court has found in situations where the evidence shows that the defendant was " 'unable to walk without staggering, and that he was in an incoherent and nearly insensible condition of mind,' " *Lytle* v. *State* (1877), 31

---

[a]Appellant cites the case of *Morgan* v. *State* (1891), 48 Ohio St. 371, as support for his contention that the comments by the trial court concerning the judicial admissions made by appellant were prejudicial error. However, that case is distinguishable on its facts from the instant cause in that the trial court in *Morgan* summarized the evidence presented by the prosecution while ignoring the evidence presented by the defense, whereas, in the case *sub. judice*, the trial court merely made a brief restatement of facts which, because of appellant's judicial admissions, were not at issue.

Ohio St. 196, 197, or where the evidence indicates that the defendant was "staggering, talking to himself, shaking his head, reeling, [and] looking wild," *Rucker* v. *State* (1928), 119 Ohio St. 189, 192, that evidence is sufficient to raise the issue of defendant's intoxication at the time of the offense.

The evidence presented in the instant cause is clearly insufficient to raise the issue of intoxication. Therefore, it was not improper for the trial court to charge the jury in the manner in which it was done.

IV.

Appellant's fourth proposition alleges that the imposition of the death penalty constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

The United States Supreme Court has held that capital punishment is not unconstitutional *per se. Proffitt* v. *Florida* (1976), 428 U. S. 242. Appellant's fourth proposition of law is overruled.

V.

Appellant's fifth proposition raises four further constitutional attacks upon Ohio's death penalty statutes.

Appellant's first constitutional attack is that the Ohio scheme denies the capitally accused the right to judgment by his peers on the issue of mitigation. That argument has been rejected in *State* v. *Bayless* (1976), 48 Ohio St. 2d 73, and subsequent cases.

Appellant's second argument is that the Ohio death penalty statutes impermissibly penalize the exercise of the right to plead not guilty and to have a jury trial. This issue was considered and resolved against appellant in *State* v. *Bell* (1976), 48 Ohio St. 2d 270; and *State* v. *Nabozny* (1978), 54 Ohio St. 2d 195.

Appellant's third contention is that the Ohio scheme shifts the burden of proving mitigating circumstances to the defendant. In the first paragraph of the syllabus in *State* v. *Downs* (1977), 51 Ohio St. 2d 47, we held:

"The proceeding established in R. C. 2929.03 and

2929.04 for imposing sentence for a capital offense is not. an adversary proceeding and, under the provisions of R. C. 2929.03(D) and (E), and R. C. 2929.04(B), neither the defendant nor the prosecution is required by statute to offer testimony or other evidence of mitigating circumstances.''

This court in *State* v. *Downs, supra,* also held that requiring the defendant to bear the risk of nonpersuasion during the mitigation hearing ''does not impose an unconstitutional burden upon a defendant which would render the Ohio statutory framework for the imposition of capital punishment unconstitutional.'' Appellant's argument must be rejected.

Appellant contends finally that the mitigating circumstances found in R. C. 2929.04(B) are unconstitutionally limited in scope. In view of the United States Supreme Court's holding in *Lockett* v. *Ohio* (1978),——U. S. ——, 57 L. Ed. 2d 973, that the statute is incompatible with the Eighth and Fourteenth Amendments, appellant's argument must be sustained.

This court having previously modified the judgment of the Court of Appeals by reducing appellant's sentence of death to life imprisonment, the judgment of the Court of Appeals as to appellant's conviction is hereby affirmed.

*Judgment accordingly.*

HERBERT, CELEBREZZE, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

LEACH, C. J., not participating.