OPINION
{¶ 1} Robert Henderson was found guilty of assault and criminal damaging by the Miamisburg Municipal Court and was sentenced accordingly. He appeals his conviction, raising four assignments of error.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} Henderson had a relationship with Nicole Wiggins, who worked at a Knight's Inn in Miamisburg. On November 2, 2001, Henderson confronted Wiggins at work while she was talking to her sister on her cellular phone. He grabbed the phone, which he threw to the ground, breaking the antenna. Henderson also pulled Wiggins' hair and struck her in the face. He left when she screamed that she was going to call the police.
 {¶ 4} When Officers Sims and Lewis of the Miamisburg Police Department arrived at the Knight's Inn, they observed the injury to Wiggins' face. Officer Lewis also observed the damage to Wiggins' phone and obtained a statement from her sister. While the officers were present, Henderson called the Knight's Inn, hanging up when Wiggins handed the phone to Officer Lewis and he identified himself as a police officer. Henderson called back twice, finally speaking to Officer Lewis on his third call. He told Officer Lewis that he could not meet with him immediately due to a court appearance and an anger management session he was required to attend.
 {¶ 5} When Henderson met with Officer Lewis later in the day on November 2, 2001, he was arrested on charges of domestic violence and criminal damaging. An assault charge was subsequently added on March 27, 2002. A bench trial was held on April 24 and June 17, 2002, and the court found Henderson guilty of assault and criminal damaging but not guilty of domestic violence. Henderson was sentenced to 180 days in jail for the assault conviction and placed on probation for one year. The court suspended 170 days of Henderson's sentence and gave him the option of performing community service in lieu of serving the remaining 10 days. Henderson was further ordered to complete the PATH program and to pay a $100 fine, restitution on the criminal damaging charge, and court costs.
 {¶ 6} Henderson appeals, raising four assignments of error.
"I. The trial court erred when it denied the defendant the ability to re-cross a prosecution witness, where the witness testified to new matters on re-direct examination."
 {¶ 7} Under this assignment of error, Henderson contends that the trial court erred in denying him the opportunity to recross-examine Officer Lewis following the state's redirect:
 {¶ 8} "Q. He couldn't meet with you right away after you talked to him on the telephone could he?
 {¶ 9} "A. That's correct.
 {¶ 10} "Q. Why is that?
 {¶ 11} "A. He had told me that he had a court appearance that he had to attend and also had to attend an anger management therapy session."
 {¶ 12} Henderson argues that the prosecution inquired into a new area with this questioning and that he should therefore have had an opportunity to further question Officer Lewis.
 {¶ 13} "Although a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, the opportunity to recross-examine a witness is within the discretion of the trial court. Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine." (Citations omitted.) State v. Faulkner (1978),56 Ohio St.2d 42, 46, 381 N.E.2d 934, citing Alford v. United States
(1931), 282 U.S. 687, 51 S.Ct. 218.
 {¶ 14} After reviewing the record, we conclude that the state did not inquire into a new area in its redirect examination of Officer Lewis. Rather, the state was following up on Henderson's cross examination, which explored his level of cooperation with the police. The state's question to Officer Lewis appears to have been intended to show that Henderson had not been willing to meet with him immediately.
 {¶ 15} The first assignment of error is overruled.
"II. The Trial Court erred when it sustained objections to questions asked on cross-examination, made for the purpose of impeachment, that would show that state witnesses engaged in specific instances of conduct inconsistent with their testimony."
 {¶ 16} Under this assignment of error, Henderson argues that the trial court erred in sustaining the state's objections to several questions asked of Wiggins by the defense during cross examination. He contends that the questions were allowable under Evid.R. 608(B) for the purpose of attacking Wiggins' credibility. In particular, Henderson apparently sought to question Wiggins regarding whether she had called him repeatedly even after the alleged assault. However, this intention is not at all clear from the questions Henderson actually asked of Wiggins or his explanation to the trial court regarding their purpose:
 {¶ 17} "Q. And you, so you were saying that you would never call Robert to try to get him upset.
 {¶ 18} "PROSECUTOR: I'm going to object again, I still don't see why this is relevant to the incident that occurred on the 2nd.
 {¶ 19} "THE COURT: Objection sustained. Unless it had something to do with this day in particular.
 {¶ 20} "DEFENSE ATTORNEY: Well, Your Honor, the one thing that I would like to do and this brings back the cell phone issue, is to indicate that not only was there a pattern of harassment but that harassment continued after this date of the event and I believe we can show that that is the case.
 {¶ 21} "THE COURT: Well, that's still not a defense to domestic violence.
 {¶ 22} "DEFENSE ATTORNEY: No, it's not, but I believe that the defendant's, that the witnesses' [sic] character is subject to scrutiny by the defense, and that's exactly what we are doing.
 {¶ 23} "THE COURT: Objection sustained.
 {¶ 24} "* * *.
 {¶ 25} "DEFENSE ATTORNEY: So with regards to, I would like to have ask [sic] the victim a question and have it in particular be objected to and that is can the victim, can Miss Wiggins tell us what her cell phone number is?
 {¶ 26} "PROSECUTOR: I would renew my objection. I don't, this is a domestic violence/assualt case.
 {¶ 27} "THE COURT: The purpose of the need?
 {¶ 28} "DEFENSE ATTORNEY: Again this is to impeach the credibility of the witness who has testified that she would never harass the defendant and we believe that we have evidence to show to the contrary.
 {¶ 29} "THE COURT: Objection sustained."
 {¶ 30} It appears now that Henderson sought to impeach Wiggins' credibility by introducing telephone records showing that she had called him on several occasions following the incident. However, he did not clearly explain his intentions to the trial court. Neither the questions themselves nor Henderson's arguments for allowing them made apparent that he intended to introduce Wiggins' telephone records. Based upon the information before the trial court at the time it sustained the state's objections, we cannot conclude that the trial court erred.
 {¶ 31} Furthermore, we note that, during recross examination on June 17, 2002, Henderson was able to introduce Wiggins' cellular phone records and question her about her calls to him. Therefore, any error on the part of the trial court in not allowing him to do so on April 24, 2002 was harmless.
 {¶ 32} The second assignment of error is overruled.
"III. The trial court erred when it refused to allow evidence to rebut testimony made in the state's case in chief that the defendant stated that he was attending anger management classes."
 {¶ 33} Under this assignment of error, Henderson argues that the trial court erred in sustaining the state's objection to the testimony of Larry Welin, with whom Henderson had attended counseling sessions. He contends that the testimony was relevant to rebut Officer Lewis's testimony that Henderson had told him that he had had to attend an anger management session and to establish that he did not have a propensity for aggressive behavior. In attempting to justify the questioning to the trial court, however, Henderson argued only that Welin's testimony was intended to "discount that he * * * would * * * exhibit aggressive characteristics." While such character testimony would be admissible under Evid.R. 404(A)(1), Henderson made no proffer to the trial court regarding the substance of Welin's testimony or how it would establish his lack of a propensity for aggressive behavior. See Evid.R. 103(A)(2). Therefore, it was unclear to the trial court, and it remains unclear to this court, how Welin's testimony regarding Henderson's counseling sessions would have established that he did not have a propensity for aggressive behavior. We conclude that any error by the trial court in disallowing the testimony for the argued purpose has been waived. Id.
 {¶ 34} With regard to rebutting Officer Lewis's testimony that Henderson had told him that he had had to attend an anger management session, we note that Henderson did not argue this purpose to the trial court. In any case, however, ample evidence was admitted to rebut Officer Lewis's statement. Henderson himself testified that he had not said that he had had to attend an anger management session. Furthermore, prior to the state's objection to Welin's testimony, Welin stated that Henderson had initiated the counseling, which would negate any inference that Henderson was attending court-ordered anger management sessions.
 {¶ 35} The third assignment of error is overruled.
"IV. The trial court erred when it found the defendant guilty of assault, against the manifest weight of the evidence."
 {¶ 36} When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380, 387,1997-Ohio-52, 678 N.E.2d 541, citing State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." Id. at 175.
 {¶ 37} Henderson argues essentially that Wiggins was not credible because her testimony was inconsistent and vague. He further argues that her credibility was weakened by evidence that she had contacted Henderson several times after the alleged assault, contradicting her testimony that she was afraid of him.
 {¶ 38} The trial court's credibility determinations are entitled to great deference by a reviewing court. See State v. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359. This case essentially involved two competing versions of the same incident. Wiggins testified that Henderson had hit her, and Henderson testified that he had not. The trial court clearly determined that Wiggins was the more credible of the two, and we do not believe that the court clearly lost its way. Our reading of Wiggins' testimony does not reveal the glaring inconsistencies that Henderson claims exist. Furthermore, the only evidence that Wiggins repeatedly contacted Henderson were telephone records indicating that three calls were made to Henderson during one night from Wiggins' cellular phone. This fact does not render Wiggins' testimony unworthy of belief. In addition, the state presented the testimony of several witnesses that Wiggins had, in fact, had some swelling under her eye, which would support her contention that Henderson had hit her during the confrontation that he admitted to having had with her. Accordingly, we conclude that Henderson's conviction for assault was not against the manifest weight of the evidence.
 {¶ 39} The fourth assignment of error is overruled.
 {¶ 40} The judgment of the trial court will be affirmed.
BROGAN, J. and GRADY, J., concur.