JOURNAL ENTRY AND OPINION
{¶ 1} A jury found defendant Mildred Hardley (the case was incorrectly filed under the name "Hartley") guilty of three counts of aggravated arson after the state submitted proof that she purposely set fire to a duplex after arguing with one of the tenants of the duplex. On appeal, she claims (1) that the verdict is suspect because the primary witness was inherently unbelievable and (2) that the court erred by not allowing her to engage in recross examination of certain witnesses.
 {¶ 2} The background facts are undisputed. Hardley's brother lived in the bottom half of the duplex. The landlord informed both Hardley's brother and the upstairs tenants, Renoria and Ronald Jackson, that he was evicting them. On the day of the offense, Hardley went to the duplex to help her brother move. As the moving chores stretched into the night, Hardley and Renoria Jackson became embroiled in an argument.
 {¶ 3} A next door neighbor testified he witnessed the argument as he sat outside on his porch. After the argument ended, he saw Hardley holding a shirt in her hand. She used a lighter and set the shirt on fire, and then threw the shirt into the house very close to a couch, which caught fire. At the time, there were three occupants in the upstairs part of the duplex. About ten minutes later, the neighbor confronted Hardley about starting the fire with people in the house. She replied, "fuck them." The neighbor ran to his house and said that he saw Hardley sitting in her car, watching the fire. Later that evening, he spoke with the occupants of the duplex and told them that he saw Hardley start the fire.
 {¶ 4} An arson investigator with the fire department testified and gave his opinion that the fire had been intentionally set. He said that the fire's point of origin had been near the couch. The arson investigator also said that a shirt, used in a manner consistent with the neighbor's testimony, could start a fire like that which consumed the entire house.
 {¶ 5} Hardley testified and denied starting the fire. She blamed the neighbor's brother for starting the fire, and said that she saw the brother leaving the premises with a smirk on his face, saying that the brother said that he "set the house on fire." Attempts to subpoena the brother failed as he could not be located.
 I {¶ 6} Hardley complains that the state produced insufficient evidence to support a conviction for aggravated arson and that the verdict was against the manifest weight of the evidence. Having examined her argument concerning the sufficiency of the evidence, we find it relates entirely to the weight of the evidence. Hardley makes no argument that the state failed to produce evidence from which a reasonable trier of fact could find that the essential elements of the offense had been proven beyond a reasonable doubt. Instead, she argues that no reasonable trier of fact could have relied on "the State's only link to Ms. Hardley" — a clear reference to the neighbor's testimony. Certainly, the neighbor gave testimony which established the elements of aggravated arson. Hardley's argument that no reasonable trier of fact could believe that testimony is a classic manifest weight of the evidence argument, so we will confine our review solely to the issue of the weight of the evidence.
 {¶ 7} Our inquiry into issues concerning the weight of the evidence is to determine whether the trier of fact "lost its way" in reaching a factual conclusion to the point where a manifest injustice has occurred and the evidence weighs heavily against conviction. State v.Group, 98 Ohio St.3d 248, 2002-Ohio-7247, at P77. We do so by considering the entire record, the evidence and the credibility of all the witnesses. We remain mindful that the trier of fact is in the best position to assess the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 8} Hardley's primary argument on appeal is that no reasonable trier of fact would have believed the neighbor's testimony that he witnessed Hardley set a shirt on fire and throw it into the house. Hardley claims this testimony is unbelievable since the neighbor had prior drug convictions and at the time of trial was jailed while awaiting trial on additional drug charges. She believes that the neighbor's desire for favorable treatment from the state on sentencing prompted him to lie about her actions.
 {¶ 9} The jury heard ample testimony about the neighbor's possible motive for fabricating his testimony, and obviously rejected it. We cannot say that it acted unreasonably in doing so, as the arson investigator corroborated the neighbor's testimony about the fire's point of origin. This was a significant piece of evidence because it tended to show that the neighbor's testimony was credible as to the origin of the fire. Moreover, the neighbor's testimony that Hardley and the upstairs tenant argued provided a motive for the offense, and that testimony was corroborated by the victims of the arson.
 {¶ 10} Hardley tells us that just three weeks after testifying, the neighbor obtained a favorable sentence on his pending cases. This fact is not in the record, so we must disregard it. See App.R. 9(A); App.R. 12(A)(1)(b). But even were that fact properly before us, the jury heard defense counsel try to impeach the neighbor with questions concerning what, if any, promises had been made in exchange for his testimony. Moreover, the court instructed the jury that it could consider a witness's prior criminal offenses for the purpose of testing the credibility and weight to be given to the witness's testimony. And despite having motives for fabricating his testimony, the neighbor's testimony was corroborated in such significant respects that we cannot say the jury lost its way.
 II {¶ 11} Hardley also complains that the court erred by denying her the opportunity for recross-examination of some of the state's witnesses. She argues that her recross-examination would have delved into new matters that arose during the state's redirect examination of certain witnesses.
 {¶ 12} In Ohio, it has been a very long-standing rule that:
 {¶ 13} "A witness who has been fully examined in chief and cross-examined, may be re-examined to explain the sense and meaning of any expression used in cross-examination; but he cannot be examined concerning new matter not referred to in the cross-examination, as to which he might have been examined in chief. Any relaxation of the rule is but an exercise of discretion, and not reviewable." Holtz v. Dick
(1884), 42 Ohio St. 23, paragraph seven of the syllabus. See, also, Statev. Wilson (1972), 30 Ohio St.2d 199, 204.
 {¶ 14} Because redirect examination is limited to new matters raised on cross-examination, "[i]deally, no new material should be presented on redirect, because litigants will in theory have presented all pertinent issues during the direct examination of it stands to reason that no new matters should arise on redirect examination." United States v.Riggi (C.A. 3, 1991), 951 F.3d 1368, 1375, citing United States v.Morris (C.A. 5, 1973), 485 F.2d 1385, 1387.
 {¶ 15} However, it is sometimes inevitable that new matters will arise during redirect examination. When new matters do arise on redirect examination, the trial court "must" allow the defense the opportunity to recross-examine. State v. Faulkner (1978), 56 Ohio St.2d 42, 46, citingAlford v. United States (1931), 282 U.S. 687. This is consonant with the Sixth Amendment's right to cross-examination of evidence — if the evidence is "new," the right to cross-examination would necessarily attach since cross-examination would be the only means by which the accused could test the reliability of the evidence. Davis v. Alaska
(1974), 415 U.S. 308, 316.
 {¶ 16} We do not take the Ohio Supreme Court's use of the word "must" in Faulkner as indicating that any and all recross-examination be permitted. The use of the word "must" has to be tempered by the abuse of discretion standard that the court has consistently applied for rulings on recross-examination. Id. Had the Supreme Court intended that all recross-examination, even of new matters, be permitted, it would have imposed a per se rule, not the abuse of discretion standard. And regardless whether new matters are raised on redirect examination, the court's same discretion to limit cross-examination to avoid prejudice, repetition, confusion, or harassment, see Delaware v. Van Arsdall
(1986), 475 U.S. 673, 678-679, would necessarily apply with equal force to recross-examination. Hence, we do not interpret the "must" inFaulkner to indicate that recross-examination is mandatory, even when new evidence is presented during redirect examination.
 {¶ 17} There is also the question of exactly what constitutes "new areas" on redirect examination. In United States v. Baker (C.A. 9, 1993), 10 F.3d 1374, 1405, the Ninth Circuit Court of Appeals stated, "[i]f `new matter' is defined broadly, then any question asked on redirect that had not already been asked and answered would conceivably introduce `new matter' requiring the opportunity for recross insofar as it expanded or elaborated on the witness' previous testimony."
 {¶ 18} It may be important that the Ohio Supreme Court has used the phrase "new area" as opposed to "new matter." The word "area" connotes subject-matter which, in the context of trial examination, could mean an entirely new line of inquiry had been entered into. The phrase "new matter" could be interpreted less strictly to mean content, regardless of subject-matter, that had been raised on redirect and was not addressed on cross-examination.
 {¶ 19} But while there may be a conceptual distinction between "new area" and "new matter," we think it unlikely that the Supreme Court intended to use the phrase "new area" as a term of independent legal significance. Both terms have been used so interchangeably by the courts that we have no basis for concluding that one term should be used differently from the other. For our purposes, we consider them to be one and the same.
 {¶ 20} This leaves us with the task of defining the circumstances in which a party may be entitled to recross-examination. While the abuse of discretion standard necessarily suggests that there can be no hard and fast rules on what constitutes new material for purposes of recross-examination, we believe the court should seek to limit recross-examination to testimony on redirect examination which raises a new subject-matter that is both material and non-redundant in context. The materiality aspect is obvious and requires no elaboration. The redundancy aspect should be applied to limit recross-examination to matters that were not, or could not, have been raised on cross-examination. This limitation promotes the expeditious conclusion of testimony. Experience tells us that by the time a party wishes to engage in recross-examination, most of the salient points have long since been made. The court must consider whether repeated attempts to ask "one more question" are worth the risk that the jury's interest in the testimony might wane.
 {¶ 21} We understand that circumstances will dictate the court's reaction to recross-examination requests — hence the abuse of discretion standard. We also understand that each party likes to have the last word at trial. But the court's interest in expeditiously moving the trial must take precedence over counsel's desire to have one last crack at a witness. And this includes the desire to follow-up with a question that counsel could have asked on cross-examination.
 {¶ 22} With these thoughts in mind, we find that the court did not abuse its discretion by refusing to permit Hardley's request for recross-examination. Although Hardley cites to several instances in which she wanted to engage in recross-examination, she only objected to one specific instance — the testimony of the arson investigator. Defense counsel said that she wanted to ask the investigator about the speed with which the fire would burn after being started. Defense counsel also wanted to follow-up on the investigator's testimony that none of the victims appeared to him to be under the influence of crack cocaine.
 {¶ 23} The manner in which the fire started, including its point of origin, was thoroughly covered on direct examination and the questions which defense counsel wanted to ask on recross-examination could have been raised on cross-examination. The speed with which the fire burned was not even remotely a new area of inquiry.
 {¶ 24} Questions about the arson investigator's expertise in determining the sobriety of the victims of the offense would have been redundant since they could have been asked on cross-examination, so the court did not abuse its discretion by refusing to permit recross-examination on that subject. During the arson investigator's cross-examination, defense counsel specifically asked whether the investigator had spoken with the victims. The arson investigator replied affirmatively and defense counsel did not follow up with any more questions about the appearance of the victims. On redirect examination, the state asked the investigator whether the victims appeared to be coherent and whether in his opinion they were under the influence of any drugs. The arson investigator said that the victims were coherent and that they did not appear to be under the influence of drugs. Given this questioning, Hardley's request for recross-examination into the investigator's expertise in determining sobriety would have been redundant and largely irrelevant. The court correctly noted that it took no particular expertise to determine sobriety — any lay person can testify to their impression of another person's physical condition. And had Hardley held any doubts about the credibility of the victims in light of their physical condition after the fire, she had the opportunity to ask the arson investigator as part of her questioning about the arson investigator's discussion with the victims. Because she did not do so when the opportunity presented itself, we find the court did not abuse its discretion by refusing to permit recross-examination on that point. The assigned errors are overruled.
FRANK D. CELEBREZZE, JR., J., CONCURS.
TIMOTHY E. McMONAGLE, J., CONCURS IN JUDGMENT ONLY.