JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff Karen Lostracco (appellant), as administratrix of her deceased sister Patricia Penque's (Penque) estate, appeals the jury verdict in favor of The Cleveland Clinic Foundation (CCF), in this medical malpractice and wrongful death case. After reviewing the facts of the case and pertinent law, we reverse and remand for a new trial.
 I. {¶ 2} On August 18, 2000, a pathologist at Mount Saint Mary's Hospital (MSMH) in Niagara Falls, New York diagnosed Penque with a particular type of colon cancer referred to as cecal adenocarcinoma, based on slides from a biopsy performed at the same hospital. On August 25, 2000, Penque met with Dr. Scott Strong, a colorectal surgeon at CCF, who recommended extensive abdominal surgery to rid Penque of the malignant tumors that had metastasized to her liver, large and small intestines, and ureter. On September 11, 2000, a team of CCF surgeons performed the surgery, removing Penque's cancerous masses and resecting segments of her bowels and ureter. On September 19, 2000, specimens removed during Penque's surgery were analyzed at CCF's pathology department. The results differed from MSMH's interpretation of Penque's pathology slides. The CCF pathologist identified Penque's cancer as malignant non-Hodgkins large B-cell lymphoma, as opposed to adenocarcinoma. The CCF pathology department then reviewed the MSMH slides, which were consistent with the lymphoma diagnosis.
 {¶ 3} Penque went back to Niagara Falls after her surgery and, under the supervision of an oncologist, began chemotherapy. The chemotherapy lasted through March of 2001. Penque never had a recurrence of her lymphoma. However, in the summer of 2002, she developed abdominal problems that required surgery to remove scar tissue, adhesions and obstructions in the bowel area. Penque continued to suffer from dehydration, malnutrition and immunosuppression, a disease in which the immune system has trouble fighting off infection. As a result, Penque developed sepsis, which is the spread of bacteria throughout the body. The sepsis became fatal, and Penque died on November 22, 2002.
 II. {¶ 4} In her first assignment of error, appellant argues that "the lower court erred to the substantial prejudice of the appellant in excluding the Federal Express delivery documents and the Mt. St. Mary's Hospital pathology log book." Specifically, appellant claims that MSMH sent Penque's pathology slides to CCF on August 24, 2000, 18 days prior to Penque's scheduled surgery, leaving CCF plenty of time to review the slides and confirm the diagnosis.
 {¶ 5} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Sage
(1987), 31 Ohio St.3d 173, 180. Relevant evidence has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. We will not reverse a trial court's ruling on the admissibility of evidence absent an abuse of discretion. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 6} In the instant case, on June 17, 2005, three days before trial was scheduled to begin, appellant proffered as exhibits a pathology log book from MSMH showing that Penque's pathology slides were sent to CCF and a Federal Express document showing that CCF received the slides on August 24, 2000. Also on June 17, 2005, CCF filed an objection to the admission of these documents, arguing that, inter alia, the documents were filed after the discovery cut-off date, thus prejudicing CCF because there was not enough time to review them. The court granted CCF's motion.
 {¶ 7} At trial, appellant presented expert medical testimony that chemotherapy alone, and not surgery, is the appropriate treatment for a lymphoma type of cancer. In contrast, CCF presented expert medical testimony that surgery could be an option for a lymphoma patient whose disease had advanced to a certain stage. In appellant's case, her central theory was that CCF was negligent in not reviewing the MSMH pathology slides before surgery to confirm that Penque had adenocarcinoma. It was undisputed that surgery is the best course of action for an adenocarcinoma patient. Appellant argues that CCF's negligence was then the proximate cause of Penque's sepsis, which was the immediate cause of her death. In other words, but for CCF's failure to evaluate the outside pathology before surgery, Penque would not have died as a result of sepsis. Appellant argued extensively before and during trial that the evidence showing that the MSMH pathology results were in Dr. Strong's hands well before the surgery and were relevant and, in fact, essential to her case against CCF. Appellant presented evidence that the standard of care regarding pathology from an outside institution was to have it reviewed internally before embarking on a surgical procedure.
 {¶ 8} During cross-examination of Dr. Strong in appellant's case-in-chief, the following colloquy took place:
"Q: No slides were reviewed before surgery, no pathology report reviewed before surgery by anyone that can tell you if there's something wrong with it; correct?
A: Correct.
Q: Now, if the pathology slides were there on August 24th or 25th of 2000, it's fair to say you would have them sent to pathology; correct?
A: If Ms. Penque had brought them with her during that visit, we would have labeled them up and sent them over to pathology right then and there.
Q: Right. That's your standard practice?
A: Absolutely."
 {¶ 9} CCF's argument on appeal as to why the court did not err when excluding documents showing that CCF did have the slides on August 25, 2000, is that appellant submitted them as exhibits after the discovery deadline. A review of the record shows that the discovery deadline was May 31, 2005 "for all discovery," and March 4, 2005 specifically for "all documents, medical records, bills, and expert reports" produced by plaintiff. It was not until June 2005 that appellant produced the documents in question. However, the untimeliness of production is the only factor weighing against admitting the documents into evidence. The court's discovery deadline was set on January 28, 2005 and, for the most part, both parties complied with that deadline and neither party requested an extension of time.
 {¶ 10} Ohio courts have held that it is not an abuse of discretion to exclude evidence submitted after a discovery deadline when the party at fault asked for repeated extensions and failed to comply with most of them. See, e.g., Massara v.Henery (Nov. 22, 2000), Summit App. No. 19646 (holding that "[w]hether a product of sloth or gamesmanship, repeated delays by a party in discovery create unneeded delays, waste judicial resources, and sound an unwelcome echo to nineteenth century ambush lawyering. At some point there must be a serious sanction to procedural reindeer games. Procrastinating parties are anathema to the orderly administration of civil justice"). However, the instant case differs greatly from those cases in which parties request extension after extension and play the "hurry up and wait game," frustrating the court, the attorneys who act in a timely fashion and the opposing party. Appellant, on the other hand, offered two documents into evidence after an ambiguous discovery deadline. CCF's claim of prejudice fails because, although the documents were submitted three days before the scheduled trial date, the trial was continued for 30 days, leaving CCF ample opportunity to respond. Accordingly, we find that the court abused its discretion when it summarily granted CCF's motion in limine to exclude both the Federal Express document and the MSMH pathology log book.
 {¶ 11} Furthermore, we find that this abuse of discretion was materially prejudicial to appellant's case. Although appellant may have violated the court's discovery deadline, the sanction imposed is unjust. Excluding evidence that appellant would have used to prove her claim is proper only if it surprised and was prejudicial to CCF. However, CCF's defense is that no review of outside pathology is necessary before surgery; therefore, whether or not Dr. Strong had Penque's pathology slides before, during or after the surgery should have no influence on CCF's position. Appellant, on the other hand, presented evidence that outside pathology should be reviewed before surgery; however, she was forbidden from presenting evidence that the surgeon did, in fact, possess Penque's pathology slides well before the date of surgery. Whether or not this evidence is to be believed is a question of fact for the jury to decide. However, without the missing link showing that Penque's biopsy results were sent to CCF for review, it may seem less credible to a jury that a review was, indeed, standard procedure. Accordingly, appellant's first assignment of error is sustained. We reverse the judgment in favor of CCF and remand this matter to the trial court for a new trial.
 III. {¶ 12} Although we decided this case under appellant's first assignment of error, we also sustain appellant's fourth, fifth and sixth assignments of error for the following reasons.
 {¶ 13} In her fourth assignment of error, appellant argues that the "trial court erred by allowing evidence of and taking judicial notice of a lawsuit filed by the estate of Patricia Penque in New York against other parties." We agree. See,Charles v. Conrad, Franklin App. No. 05AP-410, 2005-Ohio-6106
(holding that "a trial court cannot take judicial notice of court proceedings in another case").
 {¶ 14} In her fifth assignment of error, appellant argues that "the lower court erred by denying appellant's motion to compel discovery." Specifically, appellant argues it was error for the court not to compel CCF to produce documents regarding CCF's internal policies and procedures regarding acquiring items from an outside hospital's pathology department. As stated earlier in this opinion, disposition of discovery issues is within the sound discretion of the trial court. Additionally, pursuant to Civ.R. 61, errors concerning the exclusion of evidence are harmless unless a substantial right of the party is affected. "Thus, `an appellate court will reverse the decision of a trial court that extinguishes a party's right to discovery if the trial court's decision is improvident and affects the discovering party's substantial rights.'" Mauzy v. Kelly Servs.
(1996), 75 Ohio St.3d 578, 592 (internal citations omitted). Finally, Civ.R. 26(B)(1) states that parties may obtain discovery on any nonprivileged issue that is relevant to the case at hand.
 {¶ 15} In the instant case, appellant requested discovery pertaining to the defendant hospital's standard of care in a medical malpractice case. This information is certainly relevant. CCF's only argument as to why the court did not err in denying the motion is that it was filed after the discovery deadline. We agree with appellant that the court abused its discretion by denying her motion to compel CCF's pathology department rules and regulations.
 {¶ 16} In her sixth assignment of error, appellant argues that "the trial court erred and abused its discretion when it denied appellant an opportunity to cross-examine Dr. Scott Strong in the appellee's case-in-chief."
 {¶ 17} Pursuant to Evid.R. 611(A), the court has "reasonable control over the mode and order of interrogating witnesses and presenting evidence * * *." This includes the opportunity to recross-examine a witness; however, when the opposing party inquires into new areas during redirect examination, the court must allow the opportunity for recross-examination. State v.Faulkner (1978), 56 Ohio St.2d 42.
 {¶ 18} In the instant case, appellant called Dr. Strong as if under cross-examination in her case-in-chief, pursuant to R.C.2317.07. Dr. Strong was then called again as a witness by CCF in its case-in-chief. As Dr. Strong's direct examination occurred subsequent to his cross-examination, it serves as the redirect examination for the purpose of this analysis. In essence, the scope of Dr. Strong's exposure as a witness was defined when his direct examination was completed. The court denied further cross-examination by appellant, and CCF called no further witnesses.
 {¶ 19} In Seley v. G.D. Searle Co. (1981),67 Ohio St.2d 192, the Ohio Supreme Court held that the failure to allow recross-examination of a witness called under R.C. 2317.07 did not amount to an abuse of discretion when the original cross was extensive and no new testimony was presented. However, the instant case can be distinguished from Seley. A careful review of Dr. Strong's direct examination showed that it was more extensive and covered more specific topics than his cross-examination. For example, in CCF's direct examination of Dr. Strong, which was 57 pages of the transcript, he discussed the following: whether Penque came to CCF for a surgical consult or a second opinion; what her prognosis for recovery was without surgery; and a patient's rights and options upon learning he or she has an adenocarcinoma versus a lymphoma. These specific topics were not discussed in appellant's cross-examination of Dr. Strong, which was 24 pages of the transcript. We understand that the "newness" of these topics is subtle in that most of the testimony in this case revolved around cancer. However, we feel that CCF's direct examination raised important, if not determinative, questions that appellant would have asked if given the chance.
 {¶ 20} Given the new areas inquired into during Dr. Strong's direct examination, we agree with appellant that the court abused its discretion by denying her the opportunity to recross-examine the witness.
Judgment reversed and case remanded for a new trial.
This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellant recover of said appellee costs herein.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Sweeney, J., concur.