[Cite as *In re R.J.*, 2012-Ohio-4821.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 98034

# IN RE: R.J.

# A Minor Child

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 11109936

**BEFORE:** Boyle, P.J., Sweeney, J., and Rocco, J.

**RELEASED AND JOURNALIZED:** October 18, 2012

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio   44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Michael D. Horn
Assistant County Prosecutor
9300 Quincy Avenue, 4th Floor
Cleveland, Ohio   44106

Fallon Radigan
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, P.J.:

{¶1} Appellant, R.J.,[1] appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Court Division, finding him to be delinquent on two charges of rape, in violation of R.C. 2907.02(A)(2). He raises the following two assignments of error:

> I. Appellant's adjudication under R.C. 2907.02(A)(2) is against the manifest weight of the evidence.
>
> II. The trial court erred and violated R.J.'s state and federal confrontation rights when it precluded R.J. from fully cross-examining S.S.

{¶2} After a thorough review of the record and applicable law, we affirm.

Procedural History and Facts

{¶3} In June 2011, a complaint was filed against R.J., age 16, alleging that he "engage[d] in sexual conduct with S.S. [age 17] by purposely compelling her to submit by force or threat of force in violation of [O.R.C.] 2907.02(A)(2)." The complaint contained two counts of forcible rape against S.S., both occurring on the same day. R.J. denied the charges, and the matter proceeded to trial where the following evidence was presented.

---

[1] The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

**{¶4}** According to S.S., she and R.J. were close family friends and had known each other since they were very young; R.J. had even lived with her aunt and brother at one point in time. When they grew older, the two became "attracted to each other," and had a consensual sexual encounter when S.S. was around "14 and 15 years old." At some point, R.J. moved to Minnesota and the two continued to keep in contact, talking to one another often. By March 9, 2011, R.J. was back in Cleveland and contacted S.S. about coming over to his uncle's house to see him. S.S. told her grandmother that she was going to the library and then proceeded to meet R.J. at his uncle's house.

**{¶5}** The events that transpired at R.J.'s uncle's house were disputed at trial.

*S.S.'s Testimony*

**{¶6}** S.S.'s version of the events are as follows. Prior to arriving at R.J.'s uncle's house, R.J. asked S.S. if he should buy condoms. S.S. told him no because she just wanted to "chill."

**{¶7}** At R.J.'s uncle's house, S.S. and R.J. went upstairs to R.J.'s uncle's bedroom to hang out and watch television. For approximately 30 minutes, they talked and watched a movie. S.S. also acknowledged that she looked at pictures of "females" on R.J.'s phone, some of whom were naked. Then, R.J. started sitting on S.S.'s stomach, tickling her and causing her to laugh. S.S. asked him to stop. From there, however, the horsing around "started to change" to something more. According to S.S., R.J. was "wrestling her" while trying "to finger [her] through [her] clothes." S.S. pushed him off her but R.J. was "still forcing his hand up there." R.J. finally "stopped for a minute," at

which time S.S. texted her friend, letting him know that she was uncomfortable and needed to be picked up.

{¶8} While S.S. was texting with her friend, R.J. sat on S.S.'s stomach again. S.S. then told R.J. that she was uncomfortable and got up to leave, at which point R.J. pushed her into the door. He then grabbed both her wrists in one hand and started unbuckling her pants and belt with his other hand. He proceeded to push S.S. on the bed, and S.S. started to choke R.J. He, in turn, choked S.S. with one hand while taking off his clothes at the same time. S.S. tried to get away but R.J. pushed himself onto her and then forced his penis inside her.

{¶9} S.S. further testified that while R.J. was forcing himself on her, she was able to reach her cell phone and dial the last number that she called. Although she could not speak on the phone, S.S. testified that her friend answered the call while she was screaming for R.J. to stop. R.J. continued until he ejaculated inside S.S.

{¶10} R.J. then got up and asked S.S. if she was going to tell, which she responded "no." According to S.S., the entire incident lasted approximately 15 minutes.

{¶11} S.S. left and returned home and told her grandmother what happened. After her grandmother refused to take her to the hospital, S.S. called the police. S.S. was eventually treated at Hillcrest Hospital and seen by a sexual assault nurse examiner (S.A.N.E.).

*R.J.'s Testimony*

**{¶12}** Although R.J. testified that he and S.S. had sex together on March 9, 2011, he testified that the sex was consensual. According to R.J., he and S.S. were wrestling, "play fighting," and then S.S. got on top of him and began kissing him. R.J. testified that prior to S.S. getting on top of him and while they were wrestling, S.S. "asked [him] to stop because her head had hit the wall because the bed was right there." But other than that, S.S. never asked R.J. to stop. After S.S. got on top of him, R.J. flipped her over, kissed her, and then asked her if she wanted to have sex. S.S. said "yes." R.J. then proceeded to put his "finger in her vagina," followed by his penis. R.J. testified that the entire occurrence lasted about three minutes.

**{¶13}** R.J. further testified that S.S. left immediately afterward but that she was happy.

### *State's Other Evidence*

**{¶14}** The state also offered the testimony of Angela Fowler, the S.A.N.E. nurse who examined S.S. at Hillcrest. Fowler explained that as part of her examination, she asked S.S. to show any areas that were hurting. S.S. indicated that her neck was hurting. According to Fowler, S.S.'s neck was swollen. S.S. then described the events leading to the assault and rape, which matched S.S.'s testimony at trial. Based on S.S.'s report of choking, Fowler filled out a strangulation form and further referred S.S. to have a checkup, explaining that soft tissue damage after strangulation can happen up to two to three days after the incident.

**{¶15}** Fowler also collected a rape kit and took x-rays of S.S.'s back and neck. Fowler testified that she did not find any visible trauma in the genital area but that does not mean that "something didn't happen." She further testified that she found a bump but was not sure if it was from trauma or not.

**{¶16}** The other relevant evidence presented at trial will be discussed in the resolution of the assignments of error.

*Verdict and Sentence*

**{¶17}** The trial court found R.J. delinquent of the two counts of rape. The trial court subsequently placed R.J. through traditional placement at Village Network, deferring the juvenile sex offender and registration notification hearing until a later review.

**{¶18}** R.J. appeals his delinquency adjudication.

Manifest Weight of the Evidence

**{¶19}** In his first assignment of error, R.J. argues that his adjudication is against the manifest weight of the evidence. We disagree.

**{¶20}** In reviewing a claim challenging the manifest weight of the evidence, the question to be answered is "whether there is substantial evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 81. This review entails the following:

> we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether

the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

(Internal quotes and citations omitted.)   *Id.*

**{¶21}** The gravamen of R.J.'s first assignment of error is that S.S. was not credible and her story was "unbelievable," and therefore the trier of fact lost its way in believing her testimony.   In support of this assignment of error, R.J. points to the fact that S.S. lied to her grandmother as to where she was going on the day of the incident, lied to the police about not previously having consensual sex with R.J., and lied to the police about not having consensual sex within 72 hours of the incident.

**{¶22}** Under well-settled precedent, we are constrained to adhere to the principle that the credibility of witnesses and the weight to be given to their testimony are matters for the trier of fact to resolve.   *See State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967).   Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must give great deference to the factfinder's determination of the witnesses' credibility.   *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, ¶ 9.   Further, the trier of fact is free to believe or disbelieve all or any of a witness's testimony.   *State v. Montgomery*, 8th Dist. No. 95700, 2011-Ohio-3259, ¶ 10.

**{¶23}** Here, S.S. reasonably explained why she did not initially tell the police in her written statement that she previously had consensual sex with R.J. on one other occasion — she was afraid that they would not believe her.   The fact that S.S. also lied to her grandmother about where she was going on the day of the incident was also explained

— S.S. knew her grandmother would not approve of her hanging out with R.J. As for S.S. not informing the police that she had consensual sex with her boyfriend in the 72 hours before she went to see R.J., S.S. further testified that she was afraid that the fact would influence the police's opinion of her credibility. But regardless, these points were explored at trial and presented to the trier of fact to consider.

{¶24} And despite these omissions and S.S. lying to her grandmother, the trier of fact was still free to find S.S.'s testimony as to what transpired in the bedroom to be credible. Moreover, we cannot say that the trier of fact "lost its way" simply because it found S.S. to be more credible than R.J.

{¶25} As for R.J.'s claim that S.S.'s testimony is contradicted by the medical records, we disagree. R.J. argues that the absence of visible trauma or other injuries renders S.S.'s testimony not credible. But the mere fact that the force inflicted by R.J. did not inflict serious injuries does not negate S.S.'s testimony. We further find R.J.'s reliance on our decision in *State v. Carpenter*, 8th Dist. No. 91768, 2009-Ohio-3593, to be misplaced.

{¶26} In *Carpenter*, the alleged victim's stated injuries were actually contradicted by her medical records. Despite the alleged victim testifying that Carpenter had beaten her with a metal mop and fractured her ribs as evidenced by x-rays taken at the hospital where she sought treatment, the medical record evidence revealed that the alleged victim was never x-rayed. *Id.* at ¶ 22. Further, the diagnoses and treatment received by the alleged victim were for psychiatric complaints and asthma. *Id.* Here, the facts of this

case are completely distinguishable.   Indeed, S.S.'s account of her treatment and injuries at trial were corroborated by her medical records.

**{¶27}** The first assignment of error is overruled.

<u>Recross Examination of S.S.</u>

**{¶28}** In his second assignment of error, R.J. argues that the trial court violated his confrontation rights when it precluded him from fully cross-examining S.S.   We disagree.

**{¶29}** Specifically, R.J. argues that the trial court erroneously sustained the state's objection when his defense counsel asked S.S. the following question on recross examination:

> Q.   When you had previous consensual sex with [R.J.], did you tell anybody about it?

**{¶30}** The state objected to this question, arguing that it was beyond the scope of its redirect examination.   Defense counsel responded by pointing out that the state asked S.S. during its redirect examination about R.J.'s statement to S.S. following the alleged rape, i.e., R.J. asking S.S. if she was "going to tell," thereby opening the door to this question.   The defense sought to ask S.S. on redirect examination whether she kept her previous sexual encounter with R.J. public or private as a means to explain R.J.'s alleged statement immediately following the alleged rape.

**{¶31}** The scope of cross-examination is governed by Evid.R. 611(A), which provides:

> The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the

interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

**{¶32}** The Ohio Supreme Court has observed: "Although a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, * * * the opportunity to recross-examine a witness is within the discretion of the trial court." *State v. Faulkner*, 56 Ohio St.2d 42, 46, 381 N.E.2d 934 (1978). Courts have further held that it is "only when a prosecutor, on redirect- examination, delves into new areas that a trial court must allow recross-examination by a defendant." *State v. Carter*, 3d Dist. No. 3-94-21, 1995 Ohio App. LEXIS 710 (Feb. 22, 1995).

**{¶33}** We find that the defense could have fully explored the issue of the circumstances surrounding R.J.'s and S.S.'s single consensual sexual encounter on cross-examination but failed to do so. We agree with the state that its redirect examination was limited to asking S.S. what R.J. said after he got up from the bed, and therefore, defense counsel's questioning on recross examination went beyond the scope of redirect. Moreover, the state had asked this same question during its direct examination; therefore, it was not a "new area" that the trial court was required to allow defense counsel further opportunity to recross. *See State v. Watson*, 8th Dist. No. 90962, 2009-Ohio-2012, ¶ 66. Thus, the trial court did not abuse its discretion in limiting R.J.'s recross examination.

**{¶34}** The second assignment of error is overruled.

**{¶35}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


MARY J. BOYLE, PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KENNETH A. ROCCO, J., CONCUR