[Cite as *State v. Slaughter*, 2013-Ohio-1824.]

### IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 25270 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2011-CR-4059 |
| v. | : | |
| | : | |
| LAVATA SLAUGHTER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 3rd day of May, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by JOSEPH R. HABBYSHAW, Atty. Reg. #0089530, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. #0017456, Post Office Box 291771, Kettering, Ohio 45429-1771
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, J.

{¶ 1}    Lavata Slaughter appeals from his conviction and sentence following a bench trial on one count of sexual battery in violation of R.C. 2907.03(A)(2).

{¶ 2}    Slaughter advances three assignments of error on appeal. The first two

challenge the legal sufficiency and manifest weight of the evidence to support his conviction. The third alleges ineffective assistance of trial counsel.

{¶ 3}   The record reflects that Slaughter was convicted of sexual battery for performing oral sex on twenty-one-year-old W.Y., who has a mental impairment and an I.Q. of sixty-two. The incident occurred in Slaughter's apartment, where W.Y. had gone to get help completing a rental application. At trial, Slaughter admitted the sexual activity. The only issues were (1) whether W.Y. qualified as "substantially impaired" within the meaning of R.C. 2907.03(A)(2) and, if so, (2) whether Slaughter knew of the impairment. Based on the evidence presented, the trial court found that Slaugher had performed oral sex on W.Y. with knowledge that W.Y's ability either to appraise the nature of his conduct or to control his conduct was substantially impaired. As a result, the trial court found Slaughter guilty, imposed a two-year prison sentence, and designated him a Tier III sex offender. This appeal followed.

{¶ 4}   Slaughter's first two assignments of error challenge the legal sufficiency and manifest weight of the evidence to support his conviction. Specifically, he contends prosecution witness Robert Hankey, a school psychologist, failed to establish that  W.Y. was substantially impaired in his ability either to appraise the nature of his conduct or to control his conduct. Although Hankey gave W.Y. an I.Q. test and an achievement test, Slaughter argues that these tests measured mental and social abilities in the context of a special-education curriculum, not W.Y.'s ability to consent to sexual conduct, appraise the nature of sexual conduct, or control his sexual conduct. Slaughter also notes that Hankey did not administer a third test known as adaptive-behavior test.

{¶ 5}   When a defendant challenges the sufficiency of the evidence, he is arguing that

the State presented inadequate evidence on an element of the offense to sustain the verdict as a matter of law. *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 6}  Our analysis is different when reviewing a manifest-weight argument. When a conviction is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. A judgment should be reversed as being against the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 7}  With the foregoing standards in mind, we conclude that Slaughter's sexual-battery conviction is supported by legally sufficient evidence and is not against the weight of the evidence. In relevant part, the sexual-battery statute provides: "No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: * *

* The offender knows that the other person's ability to appraise the nature of or control the other person's own conduct is substantially impaired." R.C. 2907.03(A)(2). "The phrase 'substantially impaired,' in that it is not defined in the Ohio Criminal Code, must be given the meaning generally understood in common usage. * * * [S]ubstantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q. report." *State v. Zeh*, 31 Ohio St.3d 99, 103-104, 509 N.E.2d 414 (1987). Although substantial impairment may be established through expert testimony, such testimony is not required. Substantial impairment also may be established through lay testimony. *State v. Hall*, 11th Dist. Portage No. 2002-P-0048, 2003-Ohio-1979, ¶19; *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶21 (2d Dist.) (discussing substantial impairment in a rape case and noting that it can be shown through non-expert witnesses who have interacted with the victim).

{¶ 8} Here Hankey's expert testimony primarily concerned W.Y.'s general intelligence and abilities in an educational setting. Hankey worked as a psychologist for Huber Heights City Schools, where W.Y. had attended classes prior to graduating in October 2011 at age twenty-one. Hankey testified that he had given W.Y. an I.Q. test and an achievement test in December 2010. (Trial Tr. at 91). W.Y. scored sixty-two on the I.Q. test, placing him above just one-percent of the population. (*Id*. at 93). The score indicated "mild mental retardation." (*Id*. at 92-93). The achievement test indicated that W.Y.'s academic skills ranged from the kindergarten to second-grade level, depending on the subject. (*Id*. at 94-95). Based on his evaluation of W.Y.,

Hankey opined that W.Y. might "experience great difficulty in keeping up with his peers in a wide variety of situations that require thinking and reasoning abilities." (*Id*. at 97). He added that a person with an I.Q. of sixty-two is "typically slow at processing" information. (*Id*. at 105).

{¶ 9} Hankey was not the only witness who provided relevant testimony. W.Y.'s mother testified that he has cerebral palsy, for which he receives S.S.I., and that he has the mind of "a child." (*Id*. at 54, 57, 60). She explained that he rides a bike for transportation and enjoys roller skating and outings to Chuck E. Cheese. (*Id*. at 57-59). In his mother's opinion, W.Y. never could live on his own. (*Id*. at 61).

{¶ 10} Wayne High School intervention specialist Christine Fansler also testified about W.Y.'s mental condition. Fansler explained that she had interacted with W.Y. in the context of preparing an individual education plan. The plan addressed reading, math, and "some adaptive behavior issues." (*Id*. at 112). Fansler described "adaptive behavior" as "a measure of [a student's] coping skills, a measure of their sociability, how social they are, how they interact with people." (*Id*.). According to Fansler, W.Y. has trouble understanding things that are "not concrete." (*Id*. at 113). He misses "subtle, social nuances from others" and sees things in black-and-white terms. (*Id*. at 113-114).

{¶ 11} W.Y.'s own trial testimony provided additional insight into his mental capacity. W.Y. recalled meeting Slaughter at an RTA hub downtown and exchanging phone numbers. (*Id*. at 20). W.Y. wanted to get his own apartment, and Slaughter offered to help him complete an application. (*Id*. at 21). W.Y. rode his bicycle to Slaughter's apartment for that purpose. Slaughter answered W.Y.'s knock on the door wearing only a bikini bottom. (*Id*. at 22). Slaughter led W.Y. to a bedroom, where a pornographic video was playing. (*Id.* at 23). As W.Y. tried to complete the

application, Slaughter began rubbing W.Y's neck. (*Id*. at 25). Slaughter then sat beside W.Y. and asked if he was "all hard." (*Id*. at 26). W.Y. testified that he responded, "No, why would you say that?" (*Id*.). Shortly thereafter, Slaughter was interrupted by a knock on the front door. (*Id*. at 27). W.Y. remained in the bedroom. He testified that he "didn't know what was going to go down." (*Id*. at 28). When Slaughter returned, he took W.Y.'s penis out of W.Y.'s pants, placed it in his mouth, and sucked on it. (*Id*. at 29). W.Y. responded by trying to get up and telling Slaughter he had to leave. (*Id*. at 29-30). W.Y. testified that he did not want to engage in oral sex with Slaughter and did not give Slaughter permission to do so. (*Id*. at 29).

{¶ 12} Finally, the State played a videotape of Slaughter being interviewed by a detective after his arrest. During the interview, Slaughter described W.Y. as "childlike." He also responded affirmatively when the detective suggested that he "took advantage" of W.Y. and thought W.Y. was "slow" and "easy." At trial, Slaughter testified and admitted that W.Y. "does seem like he has a little bit of handicap, some kind of disability as far as understanding some things." (*Id*. at 150).

{¶ 13} In our view, the State's evidence was legally sufficient to support Slaughter's sexual-battery conviction, and the conviction was not against the weight of the evidence. On appeal, Slaughter complains that psychologist Hankey's testimony focused on W.Y.'s I.Q. and scholastic achievement. Pursuant to *Zeh*, such testimony alone arguably might not be enough to prove a reduction, diminution or decrease in W.Y.'s ability either to appraise the nature of his conduct or to control his conduct.[1] On the other hand, Hankey's testimony was not irrelevant. A

---

[1] As noted above, the Ohio Supreme Court in *Zeh* opined that "substantial impairment must be established by demonstrating a present reduction, diminution or decrease in the victim's ability, either to appraise the nature of his conduct or to control his conduct. This is distinguishable from a general deficit in ability to cope, which condition might be inferred from or evidenced by a general intelligence or I.Q.

trier of fact may consider a victim's I.Q., mental age, and academic ability when determining whether a substantial impairment exists under R.C. 2907.03(A)(2). *See, e.g., State v. Wade*, 9th Dist. Medina No. 02CA0076-M, 2003-Ohio-2351, ¶9-10; *In re Sechler*, 11th Dist. Trumbull No. 96-T-5575, 1997 WL 585928 (Aug. 29, 1997). Here the trial court was entitled to consider the fact that W.Y.'s I.Q. places him above just one percent of the population, that he performs academically between a kindergarten and second-grade level, and that he is slow at processing information.

{¶ 14}  Notably, the State did not rely solely on Hankey's testimony. As set forth above, W.Y.'s mother testified that he has cerebral palsy, has the mind of "a child," and enjoys roller skating and trips to Chuck-E-Cheese. In addition, intervention specialist Fansler testified that W.Y. misses subtle, social nuances. But W.Y.'s own testimony provided perhaps the most compelling evidence of a substantial impairment in his ability either to appraise the nature of his conduct or to control his conduct with regard to the sexual activity at issue. By his own admission, W.Y. accepted an invitation into the apartment of Slaughter—a relatively casual acquaintance who was wearing only a bikini bottom—and followed him to a bedroom where a pornographic video was playing. Slaughter proceeded to rub W.Y.'s neck and inquire whether W.Y. was "all hard." Despite these not-so-subtle cues, W.Y. appeared perplexed and asked why Slaughter would say such a thing. At that point, W.Y. still "didn't know what was going to go

---

report." *Zeh*, 31 Ohio St.3d at 103-04. We note that the Seventh District Court of Appeals has observed that this language from *Zeh* may be dicta. *See State v. Hillock*, 7th Dist. Harrison No. 02-538-CA, 2002-Ohio-6897, ¶24 ("However, although *Zeh* touched on the issue of what constituted 'substantial impairment,' its holding was limited to instructing when the defense could ask the court to bar the state from utilizing evidence of the contested mental condition of a victim-potential witness."). We agree with the result in *Hillock* that a long-standing mental condition may be sufficient to qualify as a substantial impairment. In any event, here the evidence of W.Y.'s substantial impairment consisted of more than his poor scholastic achievement and low I.Q. score.

down." These facts strongly suggest that W.Y. was substantially impaired in his ability either to appraise the nature of his conduct or to control his conduct in the bedroom with Slaughter.

{¶ 15} The State's evidence also supports a finding that Slaughter knew of W.Y.'s substantial impairment. Slaughter was in the room with W.Y. and was capable of observing W.Y.'s difficulty comprehending what was happening and what Slaughter had in mind. We note too that Slaughter described W.Y. as "childlike" after the incident, agreed that he "took advantage" of W.Y., and thought W.Y. was "slow" and "easy." Even at trial, Slaughter acknowledged that W.Y. "does seem like he has a little bit of handicap, some kind of disability as far as understanding some things."

{¶ 16} Having reviewed the record, we believe a rational trier of fact could have found Slaughter guilty of sexual battery for engaging in sexual conduct with W.Y. while knowing that W.Y.'s ability either to appraise the nature of his conduct or to control his conduct was substantially impaired. The evidence does not weigh heavily against the conviction. Accordingly, the first two assignments of error are overruled.

{¶ 17} In his third assignment of error, Slaughter alleges ineffective assistance of counsel based on his attorney's failure (1) to seek suppression of his oral and written statements to police, (2) to challenge Hankey's qualifications as an expert, and (3) to request a court-appointed expert to examine W.Y.

{¶ 18} To prevail on his claim, Slaughter must show that his attorney's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice exists where "there is a reasonable probability that, but for counsel's deficient performance, the outcome would have been

different." *Id.* at 694. Having reviewed the record, we see no ineffective assistance of counsel.

{¶ 19}   Although Slaughter complains about the lack of a suppression motion below, he does not identify any grounds for suppression or even attempt to show that suppression was warranted. (Appellant's Brief at 15). His bare assertion that counsel failed to seek suppression is insufficient because the failure to file a suppression motion is not per se ineffective assistance. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

{¶ 20}   With regard to Hankey's qualifications as an expert, we see no ineffective assistance in the lack of an objection. Defense counsel reasonably could have concluded that the State had established Hankey's qualifications as an expert. At the outset of his testimony, Hankey explained that he had approximately twenty-seven years of experience as a school psychologist and held a bachelor's degree in education and a master's degree in school psychology. Although Slaughter also complains that Hankey's testimony concerned only W.Y.'s capabilities in an educational setting (as opposed to his capacity to understand and consent to sexual behavior), we concluded in our analysis above that Hankey's testimony was relevant.

{¶ 21}   Finally, we see no ineffective assistance based on defense counsel's failure to seek a court-appointed expert to examine W.Y. On the record before us, we have no basis to conclude that a court-appointed expert would have found W.Y. not substantially impaired within the meaning of R.C. 2907.03(A)(2). Therefore, Slaughter cannot establish prejudice. Compare *In re C.C., M.C.*, 9th Dist. Summit No. 25835, 2011-Ohio-3357, ¶29-30 (finding no ineffective assistance in counsel's failure to move for an independent psychological expert absent evidence that the expert's conclusions would have been favorable to the movant). Moreover, the failure to seek a court-appointed expert typically falls within the realm of legitimate trial strategy. *State v.*

*Paynter*, 5th Dist. Muskingum No. CT2003-0014, 2003-Ohio-5367, ¶26-27. Such a decision cannot form the basis of an ineffective-assistance claim. *Id.* Accordingly, the third assignment of error is overruled.

{¶ 22}   The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

FAIN and WELBAUM, JJ., concur.


Copies mailed to:

Mathias H. Heck
Joseph R. Habbyshaw
J. David Turner
Hon. Gregory F. Singer