**[Cite as *State v. Tate*, 2013-Ohio-5167.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

      Plaintiff-Appellee

v.

DARRELL C. TATE

      Defendant-Appellant

Appellate Case No.    25386

Trial Court Case No.   2011-CR-3832

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of November, 2013.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting
Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts
Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee


CHRISTOPHER WESNER, Atty. Reg. No. 0082699, 22 North Market Street, Suite C, P.O. Box 920,
Troy, Ohio 45373
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1}     Defendant-Appellant, Darrell Tate, appeals from his conviction and sentence, following a jury trial in which the jury found him guilty of Forgery under R.C. 2913.31(A)(3). Tate was sentenced to 12 months in prison and was ordered to pay restitution in the amount of $17,681.15.   He presents seven assignments of error for our review.

{¶ 2}     Tate first contends that the trial court erred in ordering restitution in the amount of $17,681.15.   Next, he argues that the trial court erred in ordering restitution without considering his present and future ability to pay.   Third, Tate argues that the trial court erred in failing to give him an opportunity to be heard after the victim impact statement was made.   Tate further contends that there was insufficient evidence to convict him of Forgery, and that the trial court erred in overruling his motion for acquittal.   He also argues that his conviction was against the manifest weight of the evidence.   Additionally, he claims that the trial court made multiple erroneous rulings at trial, which violated his Sixth Amendment rights.   Lastly, Tate claims that he was denied effective assistance of trial counsel.

{¶ 3}     We conclude that the trial court did not err in ordering restitution in the amount of $17,681.15, because there is evidence in the record indicating that Tate's offense directly and proximately caused economic loss to the victim in that amount.   Next, we conclude that the trial court considered Tate's present and future ability to pay restitution when it reviewed Tate's presentence investigation report.   The record also indicates that the

trial court gave Tate the opportunity to be heard after the victim impact statement.

{¶ 4}     Additionally, the trial court properly denied Tate's motion for acquittal, because there was sufficient evidence in the record to satisfy all elements of Forgery under R.C. 2913.31(A)(3).   Tate's conviction was also not against the manifest weight of the evidence, because the conviction was based on credible witness testimony.   We further conclude that the various trial court rulings which Tate complains of were not made in error, and he was not denied his Sixth Amendment rights.   Lastly, Tate's ineffective assistance claim fails, because he did not demonstrate that his trial counsel's deficient performance prejudiced him.

{¶ 5}     The judgment of the trial court will be affirmed.

## I.   Facts and Course of Proceedings

{¶ 6}     On January 23, 2012, Darrell Tate was indicted in the Common Pleas Court of Montgomery County, Ohio, on one count of Forgery under R.C. 2913.31(A)(3). Tate pled not guilty, and the matter proceeded to a jury trial on August 21, 2012.   The following information was elicited at trial.

{¶ 7}     Darrell Tate and Janise Tate met in 1998 and married in 1999.   The couple resided together in Janise's home in Waldo, Ohio, with Janise's four children from a previous marriage.   Darrell and Janise also had two children of their own, and later adopted two more children.

{¶ 8}     In 2008, Darrell and Janise were in a car accident caused by a drunk driver.   With the assistance of an attorney, they filed a civil lawsuit against the drunk driver

for damages. The lawsuit settled, and according to the terms of the settlement, Darrell and Janise were to receive two checks - one in the amount of $2,746.64 and the other in the amount of $17,681.15. Both Darrell and Janise were named as payees on each check. Janise testified that it was her understanding that she and Darrell would have to pick up the checks from their attorney's office and sign them.

**{¶ 9}** In 2009, their relationship became strained when Darrell went to prison for a theft offense. Approximately one year later, Janise moved their family to Arkansas and filed for divorce. During this time, their settlement with the drunk driver's insurance company was still being finalized, and no settlement funds had been disbursed.

**{¶ 10}** On June 25, 2010, Darrell picked up the $17,681.15 settlement check from their attorney, and deposited it into a business account he owned at Chase Bank in Oakwood, Ohio. The business account was under the name "Complete Foreclosure Cleanouts, LLC." Janise was not a signatory to the account, and she did not have authority to make withdrawals. Prior to depositing the settlement check, Darrell's business account only had a balance of $254. Upon deposit, Darrell had immediate access to $200 of the deposited amount. Five days after depositing the check, Darrell withdrew $7,000 from the account to purchase a landscaping business called Mayberry Lawn.

**{¶ 11}** According to Janise, Darrell had lied to her about the status of the $17,681.15 check for over a year. She testified that she had called Darrell in August 2010 to inform him that she had received the $2,746.64 settlement check in the mail, and to also ask about the status of the other check. Although Darrell had deposited the $17,681.15 check two months earlier, Janise claimed that he told her the check was not ready.

{¶ 12}     Janise and Darrell made arrangements to meet at First Merit Bank in Delaware, Ohio, so they could cash the $2,746.64 check.  On September 20, 2010, Janise drove to Ohio, met with Darrell, and cashed the check as planned.   During their meeting, Janise once again asked about the status of the $17,681.15 check.  She testified that Darrell told her the check would be ready any day, and that he was going to pick it up at their attorney's office.  Janise also testified that she told Darrell to call her when the check was ready, because she wanted to cash it together, as they had cashed the $2,746.64 check.

{¶ 13}     Janise claimed that she followed up with Darrell on multiple occasions regarding the $17,681.15 check.   She testified that Darrell told her that he was unable to pick up the check because it was being held by child support.  Eventually, Janise contacted their attorney, and after some considerable time and effort, she was able to obtain a copy of the check during the summer of 2011.  The copy of the check indicated that the check was deposited on June 25, 2010.  Janise also noticed that her name had been signed on the back of the check in another's handwriting.

{¶ 14}     After Janise learned that the check had been deposited, she attempted to file a police report with the city of Delaware, Ohio, because that is where she and Darrell had lived and where the car accident originated.  She then tried to file a report in Marion County, because she believed that the accident may have occurred across county lines.  Janise claimed that she kept getting referred to different people, and was eventually referred to the Oakwood Police Department, because Darrell was residing in Oakwood, Ohio.   As a result, Janise filed a police report regarding the check with the Oakwood Police Department on October 4, 2011.

**{¶ 15}** At trial, Darrell admitted that he had signed Janise's name on the back of the check. He also admitted that he had deposited the check into his business account on June 25, 2010. He claimed that Janise had given him permission to sign her name on the check so that it could be deposited. Janise, on the other hand, testified that she never gave Darrell permission to sign her name on anything, including the check at issue. She claimed that she did not know the check was deposited until the summer of 2011.

**{¶ 16}** The Chase Bank teller who deposited the $17,681.15 check for Darrell testified that the signatures of both payees on the check were required, and that the bank would not have accepted the check if Darrell had signed only his name. However, if Darrell had written "deposit only" on the back without signing any names, the check would have been accepted for deposit into his business account.

**{¶ 17}** Janise testified that she had received no benefit from the $17,681.15 check. However, Darrell testified that he deposited funds from the check into Janise's bank account. The record indicates that in July 2010, Darrell made three deposits into Janise's bank account in the amounts of $1,000, $1,100, and $2,400. Janise claimed that Darrell never told her the deposits were related to their settlement. She testified that the $1,000 and $1,100 deposits were for an unrelated matter concerning Darrell's truck payments. She also testified that Darrell told her the $2,400 came from his mother.

**{¶ 18}** The $2,400 check had a note on it stating "insurance," but Janise testified that she had never seen a copy of the check until trial. She claimed that at the time the three July 2010 deposits were made into her account, Darrell had not mentioned that he had either picked up or deposited the $17,681.15 check. Instead, he told her the check was not ready.

{¶ 19}     After considering all of the evidence, the jury found Darrell guilty of one count of Forgery under R.C. 2913.31(A)(3).   After the verdict was announced, defense counsel waived his and Darrell's presence at the victim impact statement hearing, which took place the following day.   During the victim impact statement, Janise informed the trial court that Darrell had caused her significant financial harm over the years.   She mentioned that he allowed her house to go into foreclosure, bounced checks for thousands of dollars, failed to pay bills, and failed to pay child support.   Janise indicated that she and Darrell had agreed that she was entitled to the entire $17,681.15.   This conflicted with Darrell's trial testimony, which indicated that Janise had a half interest in the check.   See Trans. Vol. II (Aug. 22, 2012), p. 284, ln. 8-15.

{¶ 20}     Janise's victim impact statement was taped, and defense counsel was given the opportunity to review the statement at the sentencing hearing.   Defense counsel declined to review the tape, and made no statements on his client's behalf.   Prior to sentencing, the trial court indicated that it would take the victim impact statement into consideration.   The trial court also considered Darrell's criminal history, the purposes and principles of sentencing in R.C. 2929.11, and the seriousness and recidivism factors in R.C. 2929.12.   Thereafter, the trial court sentenced Darrell to 12 months in prison, and ordered him to pay court costs and restitution to Janise in the amount of $17,681.15.

{¶ 21}     Darrell appeals from his conviction and sentence.


**II. Was There Sufficient Evidence to Convict Appellant of Forgery?**

{¶ 22}     For purposes of convenience, we will address the assignments of error out

of order. Darrell's Fourth Assignment of Error is as follows:

The Trial Court Erred When It Overruled the Defendant's Rule 29 Motion

As There Was Insufficient Evidence for Conviction As a Matter of Law.

{¶ 23} Under this assignment of error, Darrell argues that the court should have granted his Crim.R. 29 motion for acquittal because the prosecution presented insufficient evidence to convict him of Forgery.

{¶ 24} Crim.R. 29(A) states that "[t]he court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. * * *."

{¶ 25} "A sufficiency-of-the-evidence argument challenges whether the State has presented adequate evidence on each element of the offense to sustain the verdict as a matter of law." *State v. Croom,* 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 36, citing *State v. Hawn*, 138 Ohio App.3d 449, 471, 741 N.E.2d 594 (2d Dist.2000). " 'An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.,* quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 26} In order to decide whether Darrell's conviction is supported by sufficient

evidence, we must first look to the elements of Forgery as set forth in R.C. 2913.31(A)(3). The elements are as follows:

> (A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
>
> * * *
>
> (3) Utter, or possess with purpose to utter, any writing that the person knows to have been forged.   R.C. 2913.31(A)(3).

**{¶ 27}**     " 'Forge' means to fabricate or create, in whole or in part and by any means, any spurious writing * * *."   R.C. 2913.01(G).   At trial, Darrell admitted to signing Janise's name on a check; therefore, he fabricated a spurious writing.

**{¶ 28}**     " 'Utter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display."   R.C. 2913.01(H). To be convicted of Forgery, Darrell had to utter a forged writing.   At trial, Darrell admitted to delivering the forged check to the bank for deposit.   Accordingly, there is sufficient evidence in the record indicating that Darrell uttered a known forged writing.

**{¶ 29}**     The element of Forgery which Darrell claims the prosecution failed to establish was that he acted with a purpose to defraud or, in the alternative, that he knowingly facilitated a fraud.   " 'Defraud' means to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).   The benefit must be one to which the person receiving the benefit is not otherwise entitled.   See *State v. Hughley*, 8th Dist. Cuyahoga No. 82051, 2004-Ohio-132, ¶ 13-14.   Darrell contends that the prosecution failed to establish that he received any benefit

by deception.

**{¶ 30}** It is undisputed that Darrell signed Janise's name to the check; therefore, it is clear he deceived the bank by presenting the check for deposit as if Janise had signed it. The record also establishes that he deceived Janise by signing her name and depositing the check without her knowledge. That Janise had no knowledge of the deposit is proven by the fact that she filed a police report concerning the forged check over a year after Darrell had deposited it. The record indicates that, at the very least, half of the $17,681.15 belonged to Janise. Therefore, by deceptively forging Janise's name, Darrell received the benefit of gaining unauthorized access and control over her money.

**{¶ 31}** Darrell contends that he did not benefit by signing Janise's name because he could have completed the deposit without Janise's signature. In support of this argument, he relies on the bank teller's testimony that the check would have been accepted for deposit if Darrell had written "deposit only" instead of signing both of their names. However, there is no evidence that Darrell knew that he could have deposited the check by merely writing "deposit only." In fact, the record indicates that Darrell believed his wife's signature was necessary to deposit the check. Darrell testified that "she had given me permission to go ahead and sign her name *so I could get it deposited * * *.*" (Emphasis added.) Trans. Vol. II (Aug. 22, 2012), p. 284, ln. 8-15. Darrell also testified that he never writes "deposit only" on checks. *Id*. at 282, ln. 2-6. Furthermore, when he and Janise cashed the $2,746.64 check, they followed the procedure of meeting at a bank, each signing the check, and cashing it together.

**{¶ 32}** Because we can assume from the record that Darrell believed his wife's

signature was required to deposit the check, it follows that he forged her name with the intention of receiving the benefit of gaining unauthorized access and control over her money. Accordingly, there was a purpose to defraud as to Janise's portion of the check, to which Darrell was not entitled.

{¶ 33}     In addition, the bank teller testified that if there are signatures on the back of a check, it is the bank's policy to verify that all payee signatures are present, or the bank will not accept the check for deposit.   Therefore, as soon as Darrell signed his name on the back of the check, Janise's signature became a necessary component for its deposit.   Upon signing Janise's name, Darrell gained the benefit of depositing the funds into his business account, which he would not have been able to do had there only been one signature on the check.

{¶ 34}     For all the foregoing reasons, Darrell sufficiently benefitted from forging Janise's signature to satisfy the purpose to defraud element of Forgery.   Any rational trier of fact could have found the essential elements of Forgery proven beyond a reasonable doubt. Accordingly, Darrell's Fourth Assignment of Error is overruled.

### III. Was Appellant's Conviction Against the
### Manifest Weight of the Evidence?

{¶ 35}     Darrell's Fifth Assignment of Error states as follows.

The Appellant's Conviction was Against the Manifest Weight of the Evidence.

{¶ 36}     Under this assignment of error, Darrell argues that his Forgery conviction

was against the manifest weight of the evidence. His argument is based on the contention that the great weight of the evidence does not show that he signed the $17,681.15 check: (1) without permission; or (2) with purpose to defraud or to knowingly facilitate a fraud. We disagree.

{¶ 37} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Cassell*, 2d Dist. Clark No. 09CA0064, 2011-Ohio-23, ¶ 46, citing *State v. Hufnagle*, 2d Dist. Montgomery No. 15563, 1996 WL 501470, *3 (Sept. 6, 1996). When a conviction is challenged on appeal as being against the manifest weight of the evidence, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 38} "The credibility of the witnesses and the weight to be given to their testimony are matters for the trier of facts to resolve." *Cassell* at ¶ 48, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). "This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict." (Citation omitted.) *Id*. at ¶ 50.

{¶ 39} The jury, as the trier of fact in this case, was free to believe some, all, or

none of Darrell's testimony. It was also free to give more credence to the testimony of the other witnesses, including Janise Tate. At trial, Darrell admitted to signing Janise's name on the settlement check and depositing the check into his business account. Darrell testified that he had Janise's permission to sign her name to the check, but Janise testified that she did not give him permission. The jury chose to believe Janise. The jury did not lose its way, nor did it create a miscarriage of justice simply because it chose to believe Janise over Darrell.

{¶ 40} Earlier, we concluded that the purpose to defraud element of Forgery is satisfied because there is sufficient evidence in the record indicating that Darrell knowingly obtained a benefit by deception when he signed Janise's name to the check and deposited it. There are no conflicts in this evidence. Therefore, the jury did not lose its way or create a miscarriage of justice when it determined that Darrell signed the check with a purpose to defraud.

{¶ 41} For the foregoing reasons, the Forgery conviction is not against the manifest weight of the evidence. Darrell's Fifth Assignment of Error is overruled.

### IV. Did the Trial Court Err in Awarding Restitution in the Amount of $17,681.15?

{¶ 42} Darrell's First Assignment of Error is as follows:

It Was Plain Error for the Trial Court to Order Restitution in the Amount of $17,681.15 Based on the Victims [sic] Economic Loss That Was Not the Direct and Proximate Result of the Offense Committed.

**{¶ 43}** Under this assignment of error, Darrell argues that the order awarding $17,681.15 in restitution to Janise should be vacated, because the record contains no evidence of economic loss suffered by Janise as a direct and proximate result of his Forgery offense.

**{¶ 44}** Darrell never objected to the restitution order at the trial court level; therefore, he has waived all but plain error as permitted by Crim.R. 52(B). *See State v. Hill*, 2d Dist. Montgomery No. 23343, 2010-Ohio-2508, ¶ 6. "Plain error is only to be found in the exceptional case where there has been an error that must be corrected to prevent a manifest miscarriage of justice. It should only be found where the error complained of 'would have a material adverse affect on the character and public confidence in judicial proceedings.' " *In re Seaman,* 2d Dist. Montgomery No. 18530, 2001 WL *227392, *2* (Mar. 9, 2001), quoting *Reichert v. Ingersoll,*18 Ohio St.3d 220, 223, 480 N.E.2d 802 (1985). (Other citation omitted.)

**{¶ 45}** Under R.C. 2929.18(A)(1), a trial court is authorized to order a defendant convicted of a felony offense to pay restitution to the victim of the offense for the amount of any economic loss the victim suffered as a result. R.C. 2929.18(A)(1) provides in pertinent part:

> If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not

exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense.

**{¶ 46}** "[W]e review the trial court's decision under an abuse of discretion standard." *State v. Collins*, 2d Dist. Montgomery Nos. 21510, 21689, 2007-Ohio-5365, ¶ 13. "A trial court abuses its discretion in ordering restitution in an amount that was not determined to bear a reasonable relationship to the actual loss suffered." *Id.*, citing *State v. Williams*, 34 Ohio App.3d 33, 35, 516 N.E.2d 1270 (2d Dist.1986).

**{¶ 47}** "An order of restitution must be supported by competent, credible evidence in the record." *Id.* at ¶ 12, citing *State v. Warner*, 55 Ohio St.3d 31, 69, 564 N.E.2d 18 (1990). Furthermore, " '[a] sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted.' " *Id.,* quoting *State v. Banks,* 2d Dist. Montgomery No. 20711, 2005-Ohio-4488, ¶ 5. " 'Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered.' " *Id.,* quoting *State v. Golar*, 11th Dist. Lake No. 2002-L-092, 2003-Ohio-5861, ¶ 9.

**{¶ 48}** In this case, the record establishes that Janise's economic loss was directly and proximately caused by Darrell's forgery, because the forgery enabled him to gain unauthorized access and control over her settlement funds. During her victim impact statement, Janise indicated that she was entitled to the entire $17,681.15 check. Darrell, however, testified that she had a half interest. The trial court found Janise more credible, and in its discretion, the court based the order of restitution on the amount recommended by Janise. Her economic loss is established with reasonable certainty, because it is the exact

amount of the check at issue. Accordingly, we do not find that the trial court's restitution order was an abuse of discretion.

{¶ 49}    Darrell's First Assignment of Error is overruled.

## V.    Did the Trial Court Fail to Consider Appellant's
## Present and Future Ability to Pay Restitution?

{¶ 50}    Darrell's Second Assignment of Error is as follows:

It Was Plain Error for the Trial Court to Order Restitution Without Considering the Offender's Present and Future Ability to Pay Restitution.

{¶ 51}    Under this assignment of error, Darrell argues that the restitution order should be vacated, because the trial court failed to consider Darrell's future ability to pay restitution as required by R.C. 2929.19(B)(5). Darrell never objected to this at the trial level; therefore, his argument is governed by the plain-error standard of review. *See Hill*, 2d Dist. Montgomery No. 23343, 2010-Ohio-2508 at ¶ 6.

{¶ 52}    R.C. 2929.19(B)(5) "imposes a duty upon the trial court to 'consider the offender's present or future ability to pay' before imposing any financial sanctions under R. C. 2929.18." *State v. Ratliff*, 194 Ohio App.3d 202, 2011-Ohio-2313, 955 N.E.2d 425, ¶ 12 (2d Dist.), quoting *State v. Martin*, 140 Ohio App.3d 326, 338, 747 N.E.2d 318 (4th Dist.2000). (Other citation omitted.) The statute does not require the trial court to consider any specific factors when determining the offender's present or future ability to pay financial sanctions. (Citation omitted.) *Id*. Nor does the statute require a hearing on the matter. (Citation omitted.) *Id.* The court is also "not required to expressly state that it considered a

defendant's ability to pay * * *." (Citation omitted.) *State v. Parker*, 2d Dist. Champaign No. 03CA0017, 2004-Ohio-1313, ¶ 42. "The record should, however, contain 'evidence that the trial court considered the offender's present and future ability to pay before imposing the sanction of restitution.' " *State v. Culver*, 160 Ohio App.3d 172, 2005-Ohio-1359, 826 N.E.2d 367, ¶ 57 (2d Dist.), quoting *State v. Robinson*, 3d Dist. Hancock No. 5-04-12, 2004-Ohio-5346, ¶ 17. The trial court may comply with this obligation "by considering a presentence-investigation report, which includes information about the defendant's age, health, education, and work history." (Citation omitted.) *Ratliff* at ¶ 12. "The court's consideration * * * may be inferred from the record under appropriate circumstances." (Citations omitted.) *Parker* at ¶ 42*; State v. Sigmon*, 2d Dist. Montgomery No. 25149, 2013-Ohio-813, ¶ 17.

**{¶ 53}** In this case, the trial court ordered a presentence investigation report. We have reviewed the report, and it contains information about Darrell's age, physical condition, criminal history, chemical dependency, employment history, and education. There is nothing in the report indicating that Darrell would be unable to work after his release. In fact, the report states that he has a college degree in accounting and operated his own landscaping business for the past 13 years. He also has no mental illness or chemical dependencies that would prevent him from working.

**{¶ 54}** At sentencing, the court did not specifically state that it reviewed the presentence investigation report, but it did discuss aspects of Darrell's criminal history that were contained in the report. This would lead to the conclusion that the trial court reviewed the report prior to sentencing. Therefore, in the absence of anything in the record to suggest

otherwise, we must presume that the court made the required considerations when it reviewed the presentence investigation report.

{¶ 55}     For the foregoing reasons, Darrell's Second Assignment of Error is overruled.

## VI.   Did the Trial Court Give Appellant the Opportunity
## to be Heard During the Victim Impact Statement?

{¶ 56}     Darrell's Third Assignment of Error is as follows:

It Was Plain Error for the Court to Fail to Give the Appellant an Opportunity to be Heard When During the Victim Impact Statement Janise Tate Claimed Ownership of All the Proceeds from the $17,681.15 Check.

{¶ 57}     Under this assignment of error, Darrell argues that the trial court erred when it failed to provide him with an opportunity to respond to Janise's victim impact statement as required by R.C. 2930.14(B). The statute provides that:

The court shall consider a victim's statement made under division (A) of this section along with other factors that the court is required to consider in imposing sentence or in determining the order of disposition. If the statement includes new material facts, the court shall not rely on the new material facts unless it continues the sentencing or dispositional proceeding or takes other appropriate action to allow the defendant or alleged juvenile offender an adequate opportunity to respond to the new material facts.

{¶ 58}     In this case, Janise's victim impact statement included a new material

fact - that she was supposed to receive the entire $17,681.15. According to R.C. 2930.14(B), the trial court was either required to continue the sentencing hearing or take other appropriate action to give Darrell an opportunity to respond to this new allegation.

{¶ 59}     Due to the fact that Janise lives in Arkansas, the victim impact statement was made the day after Darrell's conviction, and not at the sentencing hearing. Defense counsel had a schedule conflict, so he waived his and Darrell's presence at the victim impact statement hearing. The statement was taped, and the trial court offered to play the statement at the sentencing hearing, but defense counsel declined to have it played. The trial court then indicated that it was going to consider the statement in sentencing, and gave defense counsel and Darrell an opportunity to make a statement. Both had nothing to say. The record establishes that Darrell's failure to respond to the victim impact statement was not due to a lack of opportunity, but due to his choice to remain uninformed and silent. Accordingly, the trial court complied with R.C. 2930.14(B).

{¶ 60}     Darrell's Third Assignment of Error is overruled.

## VII. Did an Accumulation of Trial Court Error Deny
## Appellant His Sixth Amendment Rights?

{¶ 61}     Darrell's Sixth Assignment of Error is as follows:

The Appellant Was Denied His Sixth Amendment Right to: 1.) Effective Assistance of Counsel; 2.) Right to Confront the Witnesses Against Him, and the Due Process of Law and a Fair Trial As a Result of the Trial Courts [sic] Rulings in Violation of the Ohio Constitution and the United States Constitution.

{¶ 62}     Under this assignment of error, Darrell argues that the accumulation of multiple erroneous rulings by the trial court denied him his Sixth Amendment rights to effective assistance of counsel, confront witnesses, due process of law, and a fair trial. Darrell specifically claims that the trial court erred by: (1) sustaining a motion in limine filed by the prosecution; (2) denying Darrell the opportunity to conduct a recross of Janise Tate; (3) denying Darrell the opportunity to proffer evidence outside the view of the jury; (4) permitting the prosecution to display a demonstrative exhibit that was inadmissible hearsay; and (5) failing to properly conduct the pace of trial due to the court's other obligations and interruptions.   We will address each of these alleged errors separately.

A.   Did the Trial Court Err in Sustaining

the Appellee's Motion in Limine?

{¶ 63}     " 'A motion in limine is a motion directed to the inherent discretion of the trial court judge to prevent the injection of prejudicial, irrelevant, inadmissible matters into trial.' " *Lingo v. Leeper*, 2d Dist. Montgomery No. 18865, 2002 WL 360661, *1 (Mar. 8, 2002),   quoting *Mason v. Swartz*, 76 Ohio App.3d 43, 55, 600 N.E.2d 1121 (6th Dist.1991). "[D]ecisions granting or denying a motion in limine are reviewed under an abuse-of-discretion standard of review." (Citation omitted.)   *Estate of Johnson v. Randall Smith, Inc.,* 135 Ohio St.3d 440, 2013-Ohio-1507, 989 N.E.2d 35, ¶ 22.   "For an abuse of discretion to have occurred, the trial court must have taken action that is unreasonable, arbitrary, or unconscionable." (Citation omitted.)   *Id.*

{¶ 64}     In this case, the prosecution filed a pretrial motion in limine to exclude all

evidence purporting to show the interest each party allegedly had in the $17,681.15 check. In support of the motion, the prosecution argued that this information was irrelevant to the Forgery charge, and that admitting such evidence would confuse the jury. The trial court agreed with the prosecution, and granted the motion in limine over Darrell's objection. Darrell argues that the excluded evidence was relevant to whether Darrell knowingly obtained a benefit for himself when he forged Janise's name, which is a necessary finding under the purpose to defraud element of Forgery.

{¶ 65} " 'Relevant evidence' " is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The fact of consequence in this case is whether Darrell received a benefit to which he was not otherwise entitled by forging Janise's name on the check. If Darrell had been able to present evidence that he was entitled to the entire amount of the check, then he may have created reasonable doubt regarding whether he received a benefit to which he was not otherwise entitled. As a result, the State might not have proved the "purpose to defraud" element of Forgery. Therefore, evidence purporting to show who was entitled to the settlement funds is relevant to the fact of consequence in this case. Accordingly, the trial court erred in sustaining the motion in limine.

{¶ 66} While we conclude that the trial court erred in sustaining the motion in limine, we find that the error was harmless beyond a reasonable doubt. First, Darrell was able to testify that Janise had a half interest in the check without objection. Specifically, Darrell stated, "We had discussed that when the [$17,681.15] check came, that I - that she

had given me permission to go ahead and sign her name so I – it could get deposited and then I could get *her half* of that check." (Emphasis added.)   Trans. Vol. II (Aug. 22, 2012), p. 284, ln. 8-15.

**{¶ 67}**   Secondly, Darrell's admission as to Janise's half interest establishes that the entire $17,681.15 did not belong to him.   As a result, he received the benefit of exercising unauthorized control over Janise's portion of the check when he forged her name and deposited the check.   Accordingly, the trial court's erroneous ruling on the motion in limine did not ultimately affect the outcome of this case, because Darrell was able to testify as to Janise's interest, and by doing so, he admitted to receiving a benefit that he was not otherwise entitled.

### B.   Did the Trial Court Err When it Denied Appellant the

### Opportunity to Conduct a Recross of Janise Tate?

**{¶ 68}**   " 'Although a defendant must have the opportunity to cross-examine all witnesses against him as a matter of right, the opportunity to recross-examine a witness is within the discretion of the trial court.   Only where the prosecution inquires into new areas during redirect examination must the trial court allow defense the opportunity to recross-examine. ' " *State v. Henderson,* 2d Dist. Montgomery No. 19445, 2003-Ohio-312, ¶ 13, quoting *State v. Faulkner*, 56 Ohio St.2d 42, 46, 381 N.E.2d 934 (1978); *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931).   If "no new matters are explored on redirect examination, it is not an abuse of discretion for the trial court to deny defense counsel's request to conduct a recross-examination."   (Citations omitted.) *Faulkner* at 46.

{¶ 69}       In this case, the record establishes that the prosecution did not inquire about new matters during its redirect examination of Janise Tate. The prosecution inquired about Janise suffering from a past brain injury, the $2,400 deposit into Janise's bank account, and Darrell's debts. In addition, the prosecution clarified the chronology of events. All these topics were raised either during direct or cross-examination. Because no new matters were explored on redirect, the trial court did not abuse its discretion when it denied defense counsel's request to conduct a recross.

C.   Did the Trial Court Deny Appellant the Opportunity

to Proffer Evidence Outside the View of the Jury?

{¶ 70}       If evidence is excluded by an order in limine, "the proponent must proffer the challenged evidence outside the jury's hearing when the proponent believes it is admissible, at which time the court may in fact admit it." *Harvest Land Co-Op, Inc. v. Hora*, 2d Dist. Montgomery No. 25068, 2012-Ohio-5915, ¶ 85, citing *State v. Grubb*, 28 Ohio St.3d 199, 503 N.E.2d 142 (1986).

{¶ 71}       In this case, Darrell attempted to admit a settlement distribution statement into evidence, which related to the issue of who was entitled to the settlement funds. The prosecution objected to the statement's admission on grounds that it was irrelevant to the Forgery charge and that it was excluded from evidence as a result of the trial court's order in limine. The trial court agreed with the prosecution and sustained the objection. Thereafter, Darrell requested the opportunity to proffer the evidence on the record, and the trial court indicated that he could do it later, outside the presence of the jury. Specifically, the trial

court stated that:

> "You're not going to make [a record] now. You have to make it after we're finished, because we're not going to do that in front of the jury. So you can make that after the jury is no longer in the courtroom." Trans. Vol. II, (Aug. 22, 2012), p. 213, ln. 9-12.

{¶ 72} The record demonstrates that the trial court did not prohibit defense counsel from proffering evidence, but instead, informed him that he could proffer it later. At the close of the prosecution's case, both counsel met with the trial judge outside of the presence of the jury, and defense counsel did not follow-up on his request to proffer the evidence despite the trial court asking him, "Anything before start of the Defendant's case?" *Id.* at 267, ln. 10-11. It is not the trial court's fault that defense counsel did not follow-up on his request. Accordingly, the trial court did not deny Darrell the opportunity to proffer evidence outside the view of the jury.

### D. Did the Trial Court Allow the Prosecution to Display Inadmissible Hearsay Evidence for the Jury to View?

{¶ 73} At trial, the prosecution used a prior statement written by Janise to the Oakwood Police Department to refresh her recollection of the date on which she faxed the statement. Thereafter, the prosecution asked the trial court if it could display the written statement to the jury as demonstrative evidence for purposes of creating a time line. The defense objected on grounds that the contents of the writing included legal terminology, such as the word "utter." The trial court overruled the objection and permitted the prosecution to

use the written statement as demonstrative evidence. The record establishes that the statement was displayed to the jury only to clarify the chronology of events. The contents of the written statement were not discussed in front of the jury, and the statement was not admitted into evidence.

{¶ 74} Darrell contends that the written statement is inadmissible hearsay and that the trial court abused its discretion when it allowed the prosecution to display the statement for the jury to view. We will first determine whether the statement qualifies as hearsay, and then address whether the trial court abused its discretion in allowing it to be displayed as demonstrative evidence.

### 1. Hearsay

{¶ 75} "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). "To constitute hearsay, two elements are needed. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted. If either element is not present, the statement is not 'hearsay.' " (Footnote and citations omitted.) *State v. Maurer*, 15 Ohio St.3d 239, 262, 473 N.E.2d 768 (1984).

{¶ 76} In *State v. Bell*, 2d Dist. Montgomery No. 19605, 2004-Ohio-160, we specifically discussed whether prior witness statements are considered hearsay and stated that:

The traditional view has been that a prior statement, "even one made by the witness," is hearsay if it is offered to prove the matters asserted therein. * * * [T]he previous statement of the witness is hearsay since it rests on the credit of the

declarant, who when the statement was made, was not (1) under oath, (2) in the presence of the trier of fact, or (3) subject to cross-examination. McCormick on Evidence, Vol. 2, at Sec. 251 (Fifth Ed.); also see Weissenberger's Ohio Evidence, 2004 Courtroom Manual at 341. *Id*. at ¶ 13.

**{¶ 77}** Therefore, a prior witness statement made outside of court is hearsay if it is offered to prove the truth of the matter asserted. However, it is not hearsay "if an out-of-court statement is offered to prove a statement was made * * * not for its truth * * * [but] to show a state of mind * * * or to explain an act in question." (Citations omitted.) *Maurer* at 262. *Accord State v. Williams*, 38 Ohio St.3d 346, 348, 528 N.E.2d 910 (1988) (A statement is not hearsay "if it is admitted to prove that the declarant made it, rather than to prove the truth of its contents").

**{¶ 78}** In this case, Janise's written statement was not offered to prove the truth of the matter asserted. Instead, it was only used to demonstrate that Janise had faxed the statement to the police on October 4, 2011. Accordingly, the statement at issue is not hearsay.

### 2. Demonstrative Evidence

**{¶ 79}** "It is within the trial court's discretion to allow or disallow a given demonstrative exhibit, whether or not that exhibit is actually admitted into evidence." (Citations omitted.) *State v. Haley*, 2d Dist. Greene No. 96-CA-50, 1997 WL 435692 *5 (July 25, 1997). Therefore, we review the trial court's ruling on demonstrative exhibits under an abuse of discretion standard. (Citation omitted.) *State v. Griffin*, 2d Dist. Montgomery No. 20681, 2005-Ohio-3698, ¶ 62. " 'Abuse of discretion' has been defined as

an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Enterprises Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157,161, 553 N.E.2d 597 (1990).

{¶ 80} In this case, the written statement of Janise Tate was used as a visual aid to clarify the chronology of events. It was reasonable for the trial court to allow the statement to be used for this purpose. Furthermore, the contents of the statement were not discussed and it was not admitted into evidence. Accordingly, the trial court did not abuse its discretion when it permitted the statement to be used demonstratively.

E. Did the Trial Court's Pace and Interruptions at Trial

Violate the Appellant's Right to Due Process of Law?

{¶ 81} Darrell claims that the pace of trial was directly affected by the trial court's other obligations and duties, which were unrelated to his trial. He claimed this caused constant interruption and prevented him from receiving a fair trial. Darrell, however, does not refer to any specific interruptions. The record indicates that there were four breaks during trial. The first break was taken in order for the prosecution to ask Janise Tate questions outside the presence of the jury. The second was a lunch break. The third break was taken to identify the prosecution's exhibits after it rested its case. The fourth break was necessary for the trial judge to receive a verdict in another trial, and it is the only irregular break on the record. Darrell has failed to demonstrate how he was prejudiced by the trial court taking a break to receive the other jury verdict. Accordingly, we find his argument has no merit.

**{¶ 82}** Given that we find no prejudicial error in the trial court's rulings or conduct, Darrell was not denied his Sixth Amendment rights due to an accumulation of trial court errors. Accordingly, Darrell's Sixth Assignment of Error is overruled.

### VIII. Did Appellant Receive Ineffective Assistance of Counsel?

**{¶ 83}** Darrell's Seventh Assignment of Error is as follows:

The Appellant Received Ineffective Assistance When Trial Counsel Failed to Object to Restitution in the Amount of $17,681.15 and Ask for a Hearing on the Issue.

**{¶ 84}** We review a claim of ineffective assistance of counsel under the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, a reviewing court will not deem counsel's performance ineffective unless a defendant can demonstrate "that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different." *State v. Mitchell*, 2d Dist. Montgomery No. 21957, 2008-Ohio-493, ¶ 31, citing *Strickland* at 688. In other words, Darrell is required to "show that his attorney's performance was deficient, and that the deficient performance prejudiced him." *State v. Slaughter*, 2d Dist. Montgomery No. 25270, 2013-Ohio-1824, ¶ 18, citing *Strickland* at 687.

**{¶ 85}** In this case, Darrell claims that his trial counsel's performance was deficient because he: (1) failed to object to the victim impact statement and waived his appearance at the victim impact statement hearing; (2) failed to preserve the issue concerning

who was entitled to the $17,681.15 check; and (3) failed to object to the restitution order and failed to request a hearing.

**{¶ 86}** Assuming, arguendo, that the various failures of trial counsel constitute deficient performance, Darrell still must demonstrate that the failures prejudiced his defense. *Strickland* at 691-692, citing *United States v. Morrison*, 449 U.S. 361, 364–365, 101 S.Ct. 665, 667–668, 66 L.Ed.2d 564 (1981) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). "To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *State v. Bradley*, 42 Ohio St.3d 136,142, 538 N.E.2d 373 (1989), quoting *Strickland* at 694.

**{¶ 87}** In support of finding prejudice, Darrell only contends that, but for his counsel's failures, the standard under R.C. 2929.18(A)(1) would not have been met, thus making restitution in the amount of $17,681.15 unlawful. We disagree.

**{¶ 88}** Under Darrell's First Assignment of Error, we have already determined that the trial court properly imposed $17,681.15 in restitution pursuant to R.C. 2929.18(A)(1). Darrell's trial counsel did not object to the restitution order or the victim impact statement; therefore, no restitution hearing was held and no further evidence was presented on this matter. While further evidence regarding the ownership of the money may have been presented had counsel objected, Darrell cannot demonstrate that this would have changed the final restitution order. When the trial court made its restitution order, it was

aware that the $17,681.15 check was payable to both Darrell and Janise, and that Darrell had indicated Janise was entitled to half of the check. Despite this, the court chose to believe Janise's victim impact statement claiming that she was entitled to receive the entire $17,681.15. Therefore, even if Darrell's counsel had objected to the restitution order and/or victim impact statement, and presented additional evidence at a restitution hearing, he cannot demonstrate that the trial court would still not have relied on Janise's statement.

{¶ 89} We also note that counsel's failure to appear at the victim impact statement hearing had no effect on the restitution order. The final restitution order was made at a later date during the sentencing hearing. At the sentencing hearing, the trial court gave counsel the opportunity to review the victim impact statement and to address the court prior to sentencing. Accordingly, Darrell's defense was not prejudiced by counsel's failure to attend the victim impact statement.

{¶ 90} Additionally, Darrell cannot demonstrate that he was prejudiced by defense counsel's failure to preserve the issue of who was entitled to the $17,681.15. Earlier, we concluded that the trial court incorrectly excluded evidence of who was entitled to the check, but found the error harmless given that Darrell stated on the record that Janise had a half interest in the check. Therefore, the failure to preserve the issue is not prejudicial, because the record sufficiently indicates that his actions satisfy the "purpose to defraud" element of Forgery.

{¶ 91} For the foregoing reasons, Darrell did not satisfy the prejudice prong of the *Strickland* test; therefore, his ineffective assistance of counsel claim fails.

{¶ 92} Darrell's Seventh Assignment of Error is overruled.

## IX.   Conclusion

**{¶ 93}**      Having overruled all of Darrell's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FAIN, P.J. and HALL, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
Christopher Wesner
Hon. Mary Katherine Huffman